LOIS JOHNSTON, n/k/a Lois Enright, Plaintiff-Appellee, v. DONALD JOHNSTON, Defendant-Appellant (The Department of Public Aid, Intervening Appellee).

Fourth District   No. 4—89—0774

Opinion filed March 30, 1990.

Thomas W. Funk, of Lincoln, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Tanya Solov, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE GREEN delivered the opinion of the court:

On April 24, 1989, petitioner Lois Johnston, n/k/a Lois Enright, and the Illinois Department of Public Aid, an intervening petitioner, acting pursuant to section 10—10 of the Illinois Public Aid Code (Ill. Rev. Stat. 1987, ch. 23, par. 10—10) filed a petition in the circuit court of Logan County seeking a judgment for past-due, court-ordered, child support payments from petitioner's former husband, respondent Donald Johnston. After holding an evidentiary hearing, the court entered a judgment on September 5, 1989, in favor of petitioner and against respondent in the sum of $43,030. The case turns upon the question of whether under the decision in *Blisset v. Blisset* (1988), 123 Ill. 2d 161, 526 N.E.2d 125, the doctrine of equitable estoppel as a defense to liability for past-due child support has been completely abolished. The circuit court concluded it had. We hold the doctrine has been restricted but not completely abolished, and that it applies here. Accordingly, we affirm in part, reverse in part, and remand.

On June 17, 1974, the circuit court had granted petitioner a divorce from respondent and awarded her the custody of their five children. The court ordered respondent to pay to petitioner, as child support, the sum of $50 per week from July 17, 1974, to May 31, 1976, and $70 per week thereafter. After being unable to obtain service on respondent in Illinois to obtain relief from respondent's past-due support and to obtain a greater amount of support, petitioner proceeded under the provisions of the Revised Uniform Reciprocal Enforcement of Support Act (Ill. Rev. Stat. 1975, ch. 68, par. 101 *et seq.*). On June 1, 1976, the circuit court transmitted her petition for relief to the circuit court in Randall County, Texas, where respondent resided. After obtaining service on respondent, the latter court entered an order on July 26, 1976, requiring him to pay $150 per month, $50 of which was to be applied to an arrearage of $1,000, which then existed. The support was ordered to be paid for the three younger children of the parties, Jeffrey, Scott, and Tonya. By then,

the two older children were emancipated.

Subsequent to the order of the Texas court, no modification of the support order ever occurred. The parties do not dispute that soon after the Texas order, Jeffrey was committed to the Department of Corrections of the State of Illinois, where he remained until he was emancipated. Neither party was required thereafter to give him full support although petitioner testified she was required to send Jeffrey money from time to time for incidentals. The major dispute concerns the support of Scott and Tonya. The parties agree that on August 8, 1977, petitioner and respondent signed a written document purporting to be an agreement that Scott would thereafter live with respondent and that petitioner would "expect no child support for him as long as he" continued to live with respondent. The evidence conclusively showed Scott had a severe discipline problem, and his mother could not handle him. Scott then continued to live with respondent until emancipated, and petitioner did not furnish him any support.

Respondent, Scott, and one of the parties' older children all testified that at the time the written document described was executed, petitioner, in their presence, told respondent that if respondent would take Scott and support him she would not expect any more child support from respondent. Petitioner testified she understood the agreement to be that she was giving up support only in regard to Scott. Her position is supported by a letter written by respondent to the Logan County State's Attorney in 1979 stating he, respondent, would resume support payments as soon as he was able to do so. Which version of these conversations is accurate would be a question for the trier of fact were the issue material. However, as we will explain, we deem the question of whether petitioner agreed that all support be discontinued, or only that in regard to Scott, to be immaterial, because we hold that regardless of the nature of the agreement between the parties, respondent has no equitable defense in regard to support for Tonya.

■■ As we have indicated, the circuit court held equitable estoppel did not apply, relying upon the decision in *Blisset*. There, application of the doctrine was attempted by a father who was under a court order to make support payments. He had entered into an agreement with the mother that he would forego visitation, and she would not require him to make support payments. In holding equitable estoppel to be inapplicable under those circumstances, the supreme court described the doctrine in these words:

"A claim of equitable estoppel exists where a person, by his

or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person. (*Dill v. Widman* (1952), 413 Ill. 448, 455-56[, 109 N.E.2d 765, 769].) The party asserting a claim of estoppel 'must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the true facts' (*Dill*, 413 Ill. at 456[, 109 N.E.2d at 769]), and such reliance should be reasonable. *Rockford Life Insurance Co. v. Department of Revenue* (1986), 112 Ill. 2d 174, 185[, 492 N.E.2d 1278, 1283]." *Blisset*, 123 Ill. 2d at 169, 526 N.E.2d at 128.

The *Blisset* court then noted (1) the father had been told by a State's Attorney he could not validly give up his rights of visitation thus putting him on notice the agreement was unreasonable; (2) to permit the forfeiture of visitation rights to constitute detriment to support an estoppel would be contrary to the best interests of the children and "frustrate the intent of child support and visitation orders" (*Blisset*, 123 Ill. 2d at 170, 526 N.E.2d at 129); (3) to permit estoppel to be imposed would permit the parents to bargain away the children's rights of support; and (4) the fact the father had planned his affairs on the basis he would not have to pay support and was then suddenly faced with a large debt was not sufficient detriment. That court did not say a party owing unpaid, court-ordered child support could not be estopped from obtaining judgment for such monies owed. Rather, that court stated, "[w]e believe that [the father] has failed to establish the elements necessary to support a claim of equitable estoppel." *Blisset*, 123 Ill. 2d at 169, 526 N.E.2d at 128.

In *Finley v. Finley* (1980), 81 Ill. 2d 317, 410 N.E.2d 12, a father subject to a lump-sum child support order for four children reduced the amount of payments he made by a *pro rata* amount as each child reached majority. No purported agreement between the parties was involved. The wife was held not to be equitably estopped to obtain the full amount of arrearage even though she had fewer children to provide for as each became emancipated. However, that court recognized that in a proper case, equitable estoppel can prevent a spouse from recovery of past-due, court-ordered child support. In *Anderson v. Anderson* (1964), 48 Ill. App. 2d 140, 198 N.E.2d 342, equitable estoppel was held to constitute a defense to a petition for contempt against a father who had failed to make court-ordered support payments after being led to believe the child beneficiary of the support payments had been adopted. The mother had failed to inform the father this was not so.

More to the point, the court held the defense of equitable estoppel to lie in *Strum v. Strum* (1974), 22 Ill. App. 3d 147, 317 N.E.2d 59. There, the court upheld the dismissal of a petition for rule to show cause against a father for nonpayment of court-ordered support payments. The child had been living with the father, and he had been supporting her during the period of the arrearage. The evidence was disputed as to whether the mother had agreed these payments could be suspended during this time. Thus, the circuit court could properly have found she did so consent.

Most recently, in the case of *In re Marriage of Webber* (1989), 191 Ill. App. 3d 327, 547 N.E.2d 749, this court applied equitable estoppel in upholding a circuit court decision denying a wife judgment against her former spouse for unpaid, court-ordered child support. The unpaid sums had accrued while the child for whom the support was designated was in the actual custody of the father, the former husband. The testimony was disputed as to whether the mother had agreed the father would not be required to furnish support while the child was in his actual custody.

█ Here, the elements of equitable estoppel, found not to exist in *Blisset*, exist to the extent that a portion of the support in arrears may equitably be deemed to be for the support of Scott. Respondent had not been advised that an agreement for petitioner to forego court-ordered support for Scott, if Scott lived with and was supported by him, was unenforceable or illegal. The agreement would not appear on its face to be unreasonable. The detriment to respondent in providing the support for Scott was real and does not appear to be contrary to the best interests of Scott. Visitation was not frustrated in any way. Scott's rights of support were not bargained away, as his father actually supported him.

We fully appreciate the strong emphasis in *Blisset* that only the court can modify a support order. We fully recognize that the parties should have gone into court and sought an agreed modification of the support order at the time of the execution of the August 8, 1977, written document. However, we do not interpret *Blisset* to indicate a spouse may not, under some circumstances, be equitably estopped from obtaining court-ordered support which is in arrears. The strongest case for such a defense would appear to be that in regard to support for Scott here, where (1) he was in the actual custody of his father on a permanent basis; (2) Scott's rights of support were not infringed as his father actually supported him; (3) the mother led the father to believe he did not need to provide support for Scott; and (3) unlike in *Blisset*, the mother would be getting a windfall for sup-

port she did not actually furnish.

We hold that whether the petitioner agreed respondent need not give her support for Tonya is immaterial, because even if she had so agreed, equitable estoppel would not lie as a defense to respondent for support attributed to Tonya. Respondent underwent no detriment in regard to Tonya's support as he did not support her. Petitioner gets no windfall for reimbursement in regard to Tonya. To have relieved respondent of the obligation to support Tonya by an estoppel arising from an agreement with petitioner would be damaging to Tonya's rights of support. The clear mandate of *Blisset* is that strong equities in favor of the delinquent support provider are necessary for equitable estoppel to be applicable. Indeed, we would have a hard time imagining a ground for application of the doctrine except in cases of great deceit being practiced against the errant spouse or where, as with Scott, the spouse under the support order, misled by an agreement with the other spouse, takes the custody of and actually fully supports the child.

Accordingly, we affirm the finding in favor of the petitioner but reverse the award of damages. We remand to the circuit court to determine the amount of back support which should equitably be attributed to the support of Scott and to reduce the amount of the award by that sum. The parties have stipulated as to the amount of support which has actually been paid and the amount due by the terms of existing court orders. The court need not reduce the support ordered by as much as one-half for that period but shall reduce it by such lesser amount as appears equitable.

Affirmed in part; reversed in part and remanded with directions.

KNECHT, P.J., and STEIGMANN, J., concur.