In the MATTER OF the Minor
Child K.A.H., d.o.b. 9/21/85

No. S–7761.

Supreme Court of Alaska.

Nov. 27, 1998.

Gerald W. Markham, Kodiak, for Appellant.

Robert H. Wagstaff, Anchorage, Richard D. Hailey, President, Association of Trial Lawyers of America, and Jeffrey R. White, Associate General Counsel, Association of Trial Lawyers of America, Washington, D.C., for Amicus Curiae the Association of Trial Lawyers of America.

Stephen J. Van Goor, Bar Counsel, Alaska Bar Association, Anchorage, for Amicus Curiae Alaska Bar Association.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

*OPINION*

FABE, Justice.

I.  *INTRODUCTION*

Alaska Rule of Professional Conduct 1.8(e) prohibits lawyers from providing clients with

financial assistance other than court costs and expenses of litigation. Gerald W. Markham, counsel in a wrongful death suit, advanced his client funds for living expenses and, following settlement of the case, sought reimbursement from the settlement funds. The superior court denied this request. Markham appeals, arguing that the loans were permissible under Rule 1.8(e), or, if not permissible, that the rule unconstitutionally denies or infringes upon access to the courts. Because we conclude that Rule 1.8(e) prohibits lawyers from advancing living expenses to clients and does not unconstitutionally interfere with court access, we affirm.

## II.  FACTS AND PROCEEDINGS

In 1993 P.K.H. was killed while working as a seaman on a commercial crabbing vessel in the Bering Sea. He left as his sole heir K.A.H., who was seven years old at the time. S.H., K.A.H.'s mother and P.K.H.'s former wife, was appointed as the personal representative of P.K.H.'s estate.

S.H., represented by Gerald W. Markham, filed a wrongful death action against P.K.H.'s employer under the federal Jones Act.[1] By 1994 S.H.'s financial situation was bleak. Markham arranged for an accountant, Andy Lundquist, to loan several hundred dollars to S.H. over the course of six months on the condition that S.H. and Markham would repay Lundquist from the proceeds of the wrongful death suit. Despite the loans, S.H. and her two daughters were evicted from their residence and, according to Markham, were living in their car in the summer of 1994. After a brief move to Wisconsin to live with S.H.'s father, S.H. was advised by counsel that all hopes for pre-litigation settlement negotiations in the wrongful death case had ended and that S.H.'s presence in Alaska was needed to locate P.K.H.'s wage records and photographs, and to give her deposition. S.H. asked one of Markham's associates to loan her money for airfare from Wisconsin and rent for an apartment in Kodiak. The associate wired S.H. $5,025.

At some point in 1995, S.H. again sought a loan from Markham to "get her by." Mark-ham asked Lundquist to make the loan, and Lundquist wrote a check for $1,000 to S.H. from Markham's account. Additionally, during the course of his representation, Markham advanced small amounts of money to S.H. for items such as "cigarettes and cosmetics." In sum, it appears that Markham's advances to S.H. and loans guaranteed by him totaled over $6,000: $5,025 in connection with S.H.'s return from Wisconsin, over $1,000 to defray ordinary costs of living, and several hundred dollars loaned by Lundquist and guaranteed by Markham.

The wrongful death suit was eventually settled in 1995 for $665,000. At a January 1996 hearing, the standing master approved Markham's one-third contingency fee of $216,692.63 and litigation costs of $15,012.10. But the court refused to allow use of settlement funds to reimburse Markham for the loans made to S.H. Markham moved for reconsideration, arguing that advances for living expenses should be allowed under Rule 1.8(e). In February 1996 the standing master recommended granting Markham an additional $3,050 to reimburse him for costs. This amount represented the cost of airfare to fly S.H. and her daughters back from Wisconsin and other costs of litigation. Markham continued to argue that he was entitled to be reimbursed for the remainder of the loans. The court approved the standing master's recommendation and noted that counsel "should ask the Supreme Court to reexamine Professional Conduct Rule 1.8 if he finds it inappropriate. The court will not consider a challenge to the rule absent an adversary proceeding." Markham appeals the court's refusal to allow his reimbursement for his advances of living expenses to S.H.

Because there is no appellee in this matter, we asked the Alaska Bar Association to file an *amicus curiae* brief in response to Markham's arguments. The Association of Trial Lawyers of America (ATLA) also filed an *amicus curiae* brief. We thank them both for their valuable assistance.

---

1.  46 U.S.C. § 688 (1975 & Supp.1998).

## III. DISCUSSION

### A. Alaska Rule of Professional Conduct 1.8(e)

#### 1. Standard of review

■ The superior court concluded that Rule 1.8(e) prevented it from allowing Markham's reimbursement for humanitarian loans to S.H. Whether Rule 1.8(e) prohibits such loans presents a question of law. We review questions of law de novo.[2] "Our duty is to adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[3]

#### 2. Rule 1.8(e) prohibits advances for living expenses.

■ We must first decide whether Markham's advances to S.H. for living expenses were permissible under Alaska Rule of Professional Conduct 1.8(e). Interpretation of Rule 1.8(e) presents a question of first impression in Alaska. Markham asserts that the rule does not forbid an attorney from making loans for living expenses to a client after the attorney has been retained. The Alaska Bar Association responds that the plain language of Rule 1.8(e) expressly prohibits a lawyer from providing financial assistance to a client other than court costs and expenses of litigation.

The Model Rules of Professional Conduct were adopted by the American Bar Association in 1983.[4] We promulgated the Alaska Rules of Professional Conduct in 1993, rescinding the Code of Professional Responsibility in its entirety.[5] The Alaska rules adopt Model Rule 1.8(e) verbatim. Rule 1.8(e) states that a lawyer may not provide financial assistance to a client in connection with litigation other than to advance court costs and litigation expenses:

A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that: (1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and (2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.[6]

The rule's language unambiguously forbids lawyers from advancing living expenses to clients. The overwhelming weight of authority on the subject supports this view. The *Annotated Model Rules* state unequivocally that "[t]he most common violation under Rule 1.8 and its Model Code counterpart occurs when a lawyer advances living expenses to a client while litigation is pending."[7] As *The Law of Lawyering* recounts, the American Bar Association House of Delegates rejected a proposed final draft of the model rules that would have allowed lawyers to advance clients funds for living expenses under Rule 1.8(e), and such advances "were once again prohibited altogether."[8] And *Modern Legal Ethics* explains that the rules "implicitly but clearly" prohibit loans for living expenses, even in cases involving especially needy clients:

The most common instance in which a lawyer might be asked by a client for assistance is an instance in which the prohibition rather clearly applies. That is when personal injury clients, both injured and possibly made impecunious by the defendants' tortious conduct, are unable to survive prolonged litigation without financial assistance. Defendants, aware of the economic pressure burdening unaided plaintiffs, have every economic incentive to prolong the litigation with frivolous motions and discovery. At least on their face,

---

**2.** *See Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

**3.** *Id.*

**4.** *See* American Bar Association, *Annotated Model Rules of Professional Conduct* vii (3d ed. 1996) (*Annotated Model Rules* ).

**5.** Alaska Supreme Court Order No. 1123 (April 14, 1993).

**6.** Alaska R. Prof. Conduct 1.8(e).

**7.** *Annotated Model Rules, supra,* at 130.

**8.** 1 Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering* § 1.8:602, at 275 (2d ed. 1996 Supp.).

both the Code and the Model Rules prohibit assistance no matter how needful the client. And so have gone most of the decisions under the Code.[9]

Accordant with this position, the vast majority of courts interpreting Rule 1.8(e) and its precursor have concluded that lawyers are prohibited from advancing living expenses to clients.[10] Although the Supreme Courts of Louisiana and Florida have reached the opposite conclusion,[11] courts in other states have not adopted their reasoning,[12] and we find their analysis unpersuasive.

In consideration of the rule's clear ban on lawyers providing financial assistance to clients in connection with litigation, except in the circumstances set forth in subsections (1) and (2), and in light of the virtual consensus among courts and commentators, we hold that Rule 1.8(e) does not permit lawyers to advance living expenses to clients.

### 3. *Rule 1.8(e) does not unconstitutionally deny or impede access to the courts.*

Markham next argues that Rule 1.8(e) unconstitutionally denies or interferes with a plaintiff's access to the courts to enforce federal rights under the Jones Act. In support of this argument, ATLA contends that the rule imposes financial hardship on plaintiffs that forces them to settle disputes rather than endure the potentially prolonged litigation process.

We recognized the general right of access to civil courts in *Bush v. Reid.*[13] In that case, based on due process and equal protection concerns, we invalidated a statute that precluded a person on parole from bringing a civil action.[14] Our analysis relied on *Boddie v. Connecticut,*[15] in which the United States Supreme Court held that indigents could not be deprived of access to divorce courts by the imposition of filing fees that they were unable to pay.[16] We again considered the right of access to the civil courts in *Patrick v. Lynden Transport, Inc.*[17] At issue was a statute requiring out-of-state plaintiffs to post a security bond for anticipated costs and attorney's fees as a condition of maintaining a suit in Alaska.[18] The "effect of the statute [was] to discriminate between those nonresidents who can afford to post a bond for costs and attorney fees and those nonresidents who cannot, as well as to discriminate between nonresidents and residents generally."[19] We concluded that the statute violated equal protection because it unreasonably restricted access to the courts.[20]

These cases are distinguishable from the case at hand. First, as we noted in *Patrick*, the holding in *Boddie* is narrow[21]—the deci-

**9.** Charles W. Wolfram, *Modern Legal Ethics* § 9.2.3, at 509 (1986).

**10.** *See Annotated Model Rules, supra*, at 130–31 (compiling cases); *see also Mississippi Bar v. Attorney HH*, 671 So.2d 1293, 1296–98 (Miss. 1995) (stating that the majority of courts have found that advancing living expenses "is violative of the Rules of Professional Conduct," and analyzing cases from Kentucky, Virginia, Oregon, South Carolina, and Arizona).

**11.** *See Florida Bar v. Taylor*, 648 So.2d 1190, 1192 (Fla.1994); *Louisiana State Bar Ass'n v. Edwins*, 329 So.2d 437, 445 (La.1976).

**12.** *See* Michael R. Koval, Note, *Living Expenses, Litigation Expenses, and Lending Money to Clients*, 7 Geo. J. Legal Ethics 1117, 1133 (1994) (stating that "[t]he *Edwins* court ... stands virtually alone in its interpretation of DR5–103(B)"); *see also Sims v. Selvage*, 499 So.2d 325, 328 n. 1 (La.App.1986) (noting that the *Edwins* interpretation "has created problems within the profession that override any benefit to the client," and suggesting reconsideration of whether lawyers should be allowed to advance living expenses to clients).

**13.** 516 P.2d 1215, 1219–21 (Alaska 1973).

**14.** *See id.* at 1220–21.

**15** 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

**16.** *See id.* at 382–83, 91 S.Ct. 780.

**17.** 765 P.2d 1375 (Alaska 1988).

**18.** *See id.* at 1376.

**19.** *Id.* at 1377.

**20.** *See id.* at 1380.

**21.** *See id.* at 1378. As the *Boddie* Court explained:

[W]e wish to re-emphasize that we go no further than necessary to dispose of the case

sion turned on the fundamental nature of marriage and the state's monopoly on the means for obtaining a divorce.[22]  In a later decision, "the Court clarified that a constitutional requirement to waive court fees in civil cases is the exception, not the general rule."[23]  The Supreme Court has further explained that it has "consistently set apart from the mine run of cases those involving state controls or intrusions on family relationships."[24]  No such fundamental family concern is at stake in this case.

· Second, whereas *Bush, Boddie,* and *Patrick* involved direct impediments to court access, this case does not.  The statute in *Bush* flatly prohibited parolees from filing suit.  The statutes in *Boddie* and *Patrick* imposed court fees that denied indigent plaintiffs access to the courts.  Such fees have been characterized as "insurmountable barrier[s] to filing suit."[25]  By contrast, nothing in Rule 1.8(e) expressly prohibits potential plaintiffs from filing suit or requires plaintiffs to pay for court access.  Indeed, Rule 1.8(e)(2) expressly *permits* a lawyer to pay the court costs and litigation expenses of indigent clients, presumably so that they will not be denied access to the courts due to their indigency.  This provision squarely addresses the concerns expressed in the *Bush* and *Patrick* cases.

Markham and ATLA also rely on *Brotherhood of Railroad Trainmen v. Virginia.*[26] *Trainmen* is inapposite, however, because it dealt with First Amendment associational rights, which are not at issue here.  In *Trainmen,* a union had a practice of advising injured members and their families to obtain legal advice before settling their claims.[27] The union also recommended particular lawyers to handle their cases.[28]  As a result, legal employment was channeled to lawyers approved by the union.[29]  The state bar association obtained an injunction to bar this practice.[30]  The Supreme Court ruled in favor of the union, concluding that its activities were protected by the First Amendment right of association.[31]  The Court explained that the state could neither interfere with these associational rights nor infringe upon the right to be fairly represented by counsel:

> A State could not, by invoking the power to regulate the professional conduct of attorneys, infringe in any way the right of individuals and the public to be fairly represented in lawsuits authorized by Congress to effectuate a basic public interest. Laymen cannot be expected to know how to protect their rights when dealing with practiced and carefully counseled adversaries, and for them to associate together to help one another to preserve and enforce rights granted them under federal laws cannot be condemned as a threat to legal ethics.  The State can no more keep these workers from using their cooperative plan to advise one another than it could use more direct means to bar them from resorting to the courts to vindicate their legal rights.  The right to petition the courts cannot be so handicapped.[32]

Several years later, in *United Transportation Union v. State Bar of Michigan,*[33] the

---

before us. . . . We do not decide that access for all individuals to the courts is a right that is, in all circumstances, guaranteed by the Due Process Clause of the Fourteenth Amendment so that its exercise may not be placed beyond the reach of any individual, for, as we have already noted, in the case before us this right is the exclusive precondition to the adjustment of a fundamental human relationship [marriage].
401 U.S. at 382–83, 91 S.Ct. 780.

**22.** *See* 401 U.S. at 374, 91 S.Ct. 780.

**23.** *M.L.B. v. S.L.J.,* 519 U.S. 102, 117 S.Ct. 555, 563, 136 L.Ed.2d 473 (1996) (commenting upon *United States v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973)).

**24.** *Id.* at 563–64.

**25.** *Roller v. Gunn,* 107 F.3d 227, 232 n. 1 (4th Cir.1997).

**26.** 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964).

**27.** *See id.* at 5, 84 S.Ct. 1113.

**28.** *See id.*

**29.** *See id.*

**30.** *See id.* at 2, 84 S.Ct. 1113.

**31.** *See id.* at 8, 84 S.Ct. 1113.

**32.** *Id.* at 7, 84 S.Ct. 1113 (citations omitted).

**33.** 401 U.S. 576, 91 S.Ct. 1076, 28 L.Ed.2d 339 (1971).

Court commented on its *Trainmen* decision, stating that "[w]e held in that case that the First Amendment guarantees of free speech, petition, and assembly give railroad workers the right to cooperate in helping and advising one another in asserting their rights under [federal law]." [34] The Court explained that the issue in *Trainmen* and related cases was "the basic right to group legal action," and the First Amendment protection of "collective activity undertaken to obtain meaningful access to the courts." [35] Rule 1.8(e) does not interfere with such rights. Furthermore, the rule does not bar plaintiffs from "resorting to the courts to vindicate their legal rights." [36] To the contrary, as discussed above, Rule 1.8(e)(2) ensures that the courts are open to indigent plaintiffs.

We further note that neither Markham nor ATLA points to a single case in which a court has held that Rule 1.8(e) is unconstitutional, and our research uncovers none. Although Markham refers to *Louisiana State Bar Association v. Edwins,*[37] the *Edwins* court did not hold that the ban on advances for living expenses was unconstitutional. Rather, the *Edwins* court merely expressed some doubt as to the constitutionality of such rules.[38] Notably, the court referred to the Louisiana Constitution's express guarantee of "access to courts." [39] We conclude that Rule 1.8(e)'s ban on lawyers advancing living expenses to clients is not unconstitutional.

### 4. *Policy arguments*

■ Markham and ATLA advance several policy arguments in favor of permitting lawyers to advance living expenses to clients. Foremost, they claim that the practice assures that indigent clients can withstand pressure to settle their claims prematurely.[40] They further suggest that the concerns about allowing lawyers to make such loans can be addressed through less restrictive means than a blanket prohibition. To this end, they observe that several jurisdictions have modified their rules to allow for advances for living expenses in certain circumstances.[41]

The Bar Association concedes that the prohibition may not be justified and that modification of the rule may be in order:

> [B]ar counsel is persuaded by a review of disciplinary cases in other jurisdictions and the professional conduct rules in the seven sister jurisdictions identified by ATLA [that have modified the rule to allow advances for living expenses] that these rationales or justifications are subject to good faith debate among reasonable lawyers and that serious consideration should be given to a review and revision of ARPC 1.8(e) to permit such assistance under certain circumstances.

The Bar Association nonetheless contends that this appeal is not the appropriate vehicle

---

34. *Id.* at 578–79, 91 S.Ct. 1076.

35. *Id.* at 585, 91 S.Ct. 1076.

36. *Trainmen,* 377 U.S. at 7, 84 S.Ct. 1113.

37. 329 So.2d 437 (La.1976).

38. *See id.*

39. *Id.*

40. *See* William R. Strelow, *Loans to Clients for Living Expenses,* 55 Cal. L.Rev. 1419, 1431 (1967) ("[T]here is a substantial likelihood that a destitute claimant will be compelled to abandon his claim or settle it for a trifling amount unless he can obtain financial assistance."); Koval, *supra,* at 1118 ("There are several good reasons why a lawyer should be able to lend a client money for living expenses. First, and most importantly, sometimes a client simply will not be able to pursue a claim if he cannot meet his basic living expenses. He may be forced to settle for a smaller amount than he deserves."); Dawn S. Garrett, Comment, *Lending a Helping Hand: Professional Responsibility and AttorneyClient Financing Prohibitions,* 16 U. Dayton L.Rev. 221, 246 (1990) ("The purpose of the prohibition is to prevent oppression in the legal system by the wealthy. This purpose will be frustrated if an impoverished client can be forced by means of financial hardship to accept the inadequate settlement offer of a wealthier opponent who can afford to wait out the delays of litigation.").

41. *See* Alabama Rule of Professional Conduct 1.8(e)(3); California Rule of Professional Conduct 4–210(A)(1) & (2); District of Columbia Rule of Professional Conduct 1.8(d)(2); Minnesota Rule of Professional Conduct 1.8(e)(3); Montana Rule of Professional Conduct 1.8(e)(3); North Dakota Rule of Professional Conduct 1.8(e)(3); Texas Disciplinary Rule of Professional Conduct 1.08(d)(1); Disciplinary Rule 5–102(B) of the Vermont Code of Professional Responsibility.

for modifying Rule 1.8(e) on policy grounds. Instead, it argues that "there is an established procedure for promulgation and adoption of these rules which should not be ignored simply because both parties do not like the present rule." We agree.

Under the Alaska Bar Association Bylaws, the Rules of Professional Conduct Committee is "responsible for reviewing suggested amendments to the [Alaska Rules of Professional Conduct] and making recommendations for amendments to the Board of Governors." [42] While we express no opinion as to the merits of the policy arguments surrounding Rule 1.8(e), we note that members of the bar are free to suggest rule changes to the Rules of Professional Conduct Committee as the first step towards amending the rules. We see no reason to vary from this process in this case.

### B. *Alaska Civil Rule 90.2*

Apart from his concerns about Rule 1.8(e), Markham also argues briefly that a lawyer who has been approached by a child's guardian to represent the child's interests in a personal injury case is entitled to court approval of a proposed contingent fee and cost agreement *before* agreeing to undertake the representation. Under this proposal, a lawyer could "respectfully disagree" with the fee approved by the court and decline the representation. Markham further seeks clarification of Rule 90.2,[43] which he alleges is "defective because it provides no standards."

These arguments are undeveloped and Markham's brief "leave[s] most of the reasons supporting an improvement in ARCP 90.2 procedures and standards for the members of this Court to suggest and debate." We see no reason to usurp counsel's role. Because the argument is not adequately briefed, we deem it waived.[44]

### C. *Attorney's Fees*

■ Finally, in the last paragraph of his opening brief, Markham seeks attorney's fees:

> The Superior Court should be further instructed to award SH her reasonable attorney's fees for the excess effort incurred by her counsel in securing the approval of these loans under the guidelines of ARCP 82, or on a public interest basis. This award should be entered against the party this court feels was the real party in interest in the judgment below.

In his reply brief, Markham further explains that "[t]his court should simply declare *which* organization (court or Bar?) was responsible for this rule and assess fees accordingly."

We decline to award attorney's fees. Given that we reject Markham's claims for reimbursement under Rule 1.8(e), he is not the prevailing party within the meaning of Alaska Civil Rule 82.[45] Moreover, Markham offers no reason to confer upon him the status of public interest litigant, and in our view he does not qualify as one.[46]

### IV. *CONCLUSION*

Because we conclude that Alaska Rule of Professional Conduct 1.8(e) prohibits lawyers from advancing funds for living expenses to clients and that the rule does not unconstitu-

---

**42.** Alaska Bar Bylaws, article VII, section 1(a)(9).

**43.** Rule 90.2 provides in relevant part:

> (a) **Approval of Settlement of Claims on Behalf of Minors.**
> (1) *Approval.* A parent or guardian of a minor who has a claim against another person has the power to execute a full release or a covenant not to sue, or to execute a stipulation for entry of judgment on such claim. However, before such a document is effective, it must be approved by the court upon the filing of a petition or motion.
> . . . .
> (3) *Attorneys' Fees and Costs.* The court shall approve any attorneys' fees and costs that are to be paid from the settlement proceeds when the minor claimant is represented by counsel.

**44.** *See Adamson v. University of Alaska,* 819 P.2d 886, 889 n. 3 (Alaska 1991).

**45.** Rule 82 provides in pertinent part:

> (a) **Allowance to Prevailing Party.** Except as otherwise provided by law or agreed to by the parties, the prevailing party in a civil case shall be awarded attorney's fees calculated under this rule.

**46.** *See, e.g., Valley Hosp. Ass'n v. Mat–Su Coalition for Choice,* 948 P.2d 963, 972 n. 21 (Alaska 1997) (stating criteria for public interest litigant status).

tionally deny or infringe upon access to the courts, we AFFIRM the decision of the superior court.