James A. MURPHY, Appellant,

v.

Rane S. NEWLYNN, Appellee.

No. S–9655.

Supreme Court of Alaska.

Nov. 2, 2001.

Nancy J. Driscoll, Tull & Associates, Palmer, for Appellant.

Dennis F. Principe, Principe Law Office, Palmer, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

MATTHEWS, Justice.

### I. INTRODUCTION

Alaska Civil Rule 90.3(h)(2) generally prohibits the retroactive modification of child support arrearages, but subsection (h)(3) authorizes courts to find that an obligee parent is precluded from collecting arrearages that accumulate for a period of nine months or more while the obligor parent is exercising de facto primary custody "of the children." The main question presented here is whether subsection (h)(3) can apply where the obligor parent has de facto primary custody of one, but not all, of the children who are the subject of a support order. Because it would be of no benefit to the affected child for the parent with de facto custody to make payments to the obligee parent, and because such payments would provide a windfall to the obligee parent, we conclude that Rule 90.3(h)(3)'s preclusion provision can apply in such a case.

### II. FACTS AND PROCEEDINGS

James Murphy and Rane Newlynn married in 1977 and had two daughters: Briana, born in November 1980, and Lauren, born in November 1982. When Murphy and Newlynn's marriage was dissolved in 1985, the couple retained joint legal custody of the two children, but the details of physical custody were unspecified. Murphy was required to pay Newlynn $400 a month in child support.

In 1990 the parties accepted a series of stipulated modifications to the 1985 dissolution decree. Murphy and Newlynn retained joint legal custody of the two children, but divided physical custody. Newlynn received primary physical custody of Briana and Lauren; Murphy was to have physical custody of the two children every summer between July 1 and August 15. The 1990 modification to the dissolution decree did not change Murphy's child support obligations.

In 1993 Superior Court Judge Beverly W. Cutler issued an order increasing Murphy's child support obligations to $635 a month, with automatic increases to reflect increases in the Consumer Price Index. Judge Cutler also granted Murphy a fifty percent extended summer visitation credit. The 1993 order did not change the parties' physical custody arrangements.

In May 1998 Murphy and Newlynn agreed between themselves to alter their custody and child support arrangements. Murphy was to assume primary physical custody of Briana during the 1998–99 school year, while Lauren remained with Newlynn. Because Murphy would have physical custody of both children during the summers, and would also be supporting one child during the school year, Newlynn agreed to waive Murphy's child support obligations from June 1, 1998, through August 15, 1999, and Murphy agreed not to seek support from Newlynn for this period.

Because the Child Support Enforcement Division ("CSED") was deducting Murphy's child support payments from his paycheck, Murphy asked CSED how to give effect to Newlynn's waiver of child support. Murphy was told that he needed to obtain Newlynn's signature on a "Withdrawal of Services" form to stop CSED's garnishment. Misinterpreting CSED's advice, Murphy mistakenly believed that Newlynn's signature on the "Withdrawal of Services" form would end his actual child support obligations, rather than just terminating CSED's deductions. Newlynn signed the "Withdrawal of Services" form on May 30, 1998, and CSED stopped garnishing Murphy's wages after approximately June 30, 1998. Murphy did not, however, seek a court order embodying the parties' agreement.

Murphy assumed physical custody of Briana in early June 1998. Briana turned eigh-

teen in November 1998, but continued living with Murphy until May 1999, when she graduated from high school.

Newlynn reapplied for CSED services in the summer of 1999, when Lauren was scheduled to return from summer visitation with Murphy. When the case was reopened, CSED determined that Murphy had accrued a child support obligation of $8,184.44 as of August 1, 1999.

After being notified that he was in arrears, Murphy filed a "Motion to Modify Custody and Child Support Orders" on August 17, 1999, seeking to have his child support obligations to Newlynn waived as of June 1998.[1] In January 2000 Murphy filed a related motion, seeking to preclude Newlynn from collecting any child support arrears that had accumulated after June 1, 1998.

Relying on the Commentary to Rule 90.3, Superior Court Judge Eric B. Smith held that Newlynn could not be precluded from collecting child support arrears because Murphy did not have primary custody of both of the parties' children during the same nine-month period. Judge Smith thus denied Murphy's motion for preclusion. Murphy appeals.

## III. *STANDARD OF REVIEW*

This court will generally not disturb a trial court's decision on a motion for child support unless the trial court abused its discretion.[2] We will set aside a lower court's factual findings only when they are clearly erroneous.[3]

However, whether the trial court used the correct method of calculating child support is a matter of law.[4] This court will apply de novo review to questions of law, adopting the rule of law most persuasive in light of precedent, reason, and policy.[5]

## IV. *DISCUSSION*

### A. *Is Newlynn's Alleged Waiver Enforceable?*

As an initial matter, Murphy argues that he should not be required to make any child support payments that accrued between June 1, 1998, and August 15, 1999, because Newlynn agreed to waive his child support obligations for that period. But agreements to waive child support are not valid until a court has reviewed and approved the waiver's substantive adequacy under Rule 90.3, and even a court-approved waiver will be given only prospective effect.[6] Not only has no court ever reviewed and approved the substantive adequacy of Newlynn's alleged waiver, but Murphy seeks retroactive modification of his previously accrued child support obligations. Under this court's precedent, Newlynn's alleged waiver thus cannot relieve Murphy from his obligation to make his past due child support payments.[7]

### B. *Can Newlynn Be Precluded from Collecting Murphy's Child Support Arrears under Civil Rule 90.3?*

Murphy also argues that Rule 90.3's preclusion provision excuses him from paying his

1. Murphy's motion also sought a modification of Lauren's custodial arrangement, and consequent modification of support payments for her. Murphy and Newlynn ultimately agreed that Lauren would reside with each parent for six months. Murphy was ordered to pay $17.75 a month in child support for Lauren, retroactive to August 17, 1999, and Newlynn was ordered to reimburse Murphy for the excess child support paid by him after August 17, 1999. The only child support payments at issue in this case are Murphy's arrearages as of August 15, 1999.

2. *See Bennett v. Bennett*, 6 P.3d 724, 726 (Alaska 2000).

3. *See id.*

4. *See id.*

5. *See Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

6. *See Nix v. Nix*, 855 P.2d 1332, 1334 (Alaska 1993).

7. Murphy also argues that he should be excused from paying his child support arrearages because he was prejudiced by CSED's failure to inform him that he needed to file a motion with the court to put Newlynn's waiver into effect. But where CSED is collecting child support on behalf of the custodial parent, its actions cannot amount to waiver or estoppel because it has no power to waive a child's right to support. *See State, Dep't of Revenue, Child Support Enforcement Div. v. Valdez*, 941 P.2d 144, 154 n. 14 (Alaska 1997).

child support arrearages, as Newlynn acquiesced to his exercising primary custody over Briana for a period exceeding nine months. In response, Newlynn contends that because the Commentary to Rule 90.3 only permits preclusion when the obligor parent exercises primary custody over all of the children on whom a support obligation is based, she should be allowed to collect arrearages from Murphy because he never had primary custody over all of the couple's children during the same nine-month period.

Civil Rule 90.3(h)(2) bars the retroactive modification of child support arrearages, except as allowed by statute.[8] But this strict rule is mitigated by Civil Rule 90.3(h)(3), which states:

> The court may find that a parent and a parent's assignee are precluded from collecting arrearages for support of children that accumulated during a time period exceeding nine months for which the parent agreed or acquiesced to the obligor exercising primary custody of the children. A finding that preclusion is a defense must be based on clear and convincing evidence.

Newlynn does not deny that Murphy had primary custody of Briana for more than nine months.[9] But it is also undisputed that Murphy did not have primary custody of both children during the same nine-month period.

Although Rule 90.3(h)(3) applies to "arrearages for support of *children*" and "primary custody of the *children*," the Rule's use of the plural term does not necessarily exclude the singular.[10] The Commentary to Rule 90.3, however, states that "preclusion would apply, as equitable estoppel does in Illinois, only when the obligor assume[s] primary custody of all the children on which the support obligation is based."[11] In support of her assertion that Murphy should fall outside the protection of Rule 90.3(h)(3) because he never had custody of all of the parties' children for a nine-month period, Newlynn does no more than point to the relevant provision of the Commentary.

The issue of preclusion received comparatively little attention during the proceedings before the superior court, which were primarily devoted to the waiver issue. The court accurately noted that the Commentary to Rule 90.3 explicitly bars preclusion in a case such as this, where the obligor parent does not assume primary physical custody of all of the children who are the subject of a support order. And the court was correct in noting that although this court has not adopted or approved the Commentary, we have often relied upon it "for guidance in child support matters."[12] Although Murphy's counsel stated that she disagreed with the Commentary and preserved the issue for appeal, she did not present the superior court with any legal authority that directly challenged the Commentary's restrictive interpretation of the preclusion provision. Under those circumstances, the court's reliance upon the Commentary was understandable.

Although this court has frequently relied on the Commentary for guidance, we have also rejected it in some instances and authorized support calculations that conflict with it.[13] In this case, we conclude that the Commentary's limitation on preclusion must be rejected if it is justified by nothing more than Illinois precedent, because Illinois does not, in fact, limit the application of equitable estoppel to cases in which the obligor parent has primary custody of all of the children

---

8. *See also Hendren v. State, Dep't of Revenue, Child Support Enforcement Div.*, 957 P.2d 1350, 1353 (Alaska 1998).

9. Briana was in Murphy's custody from approximately May 1998 to June 1999. Although Briana turned eighteen in November 1998, Murphy's obligation to support her continued until she graduated from high school in May 1999.

10. *Cf.* AS 01.10.050(b) (In the construction of Alaska statutes and regulations, "[w]ords in the singular number include the plural, and words in the plural number include the singular.").

11. Alaska R. Civ. P. 90.3, Commentary X.C.

12. *See State, Child Support Enforcement Div. v. Bromley*, 987 P.2d 183, 194 (Alaska 1999) (quoting *Bunn v. House*, 934 P.2d 753, 755 n. 7 (Alaska 1997)); Alaska R. Civ. P. 90.3, Commentary I.A.

13. *See Bunn*, 934 P.2d at 755 n. 7; *Eagley v. Eagley*, 849 P.2d 777, 781 (Alaska 1993).

upon whom the support obligation is based.[14] Instead, an obligor parent who assumes primary custody of only one of the children upon whom a support obligation is based can escape responsibility for paying support for that child, but will not escape responsibility for paying support for any children over whom he does not assume physical custody.[15] If Rule 90.3(h)(3) is interpreted in accordance with Illinois precedent, Murphy could be relieved of his obligation to pay past due child support for Briana, but would still be required to pay past due child support for Lauren.

■ Should we follow Illinois precedent, and extend the protection of Rule 90.3(h)(3) to obligor parents who assume primary custody of only some of their children? We have previously held that "[c]hild support awards, by their very definition, are intended to benefit the child, not provide a windfall to a parent."[16] We thus concluded in *Bennett v. Bennett* that it was error for the trial judge to grant retroactive child support to a parent with de jure custody of a child, where the parent had relinquished de facto custody of the child and no longer provided the child with any financial support.[17] Murphy had de facto custody of Briana, and there is no evidence in the record that Newlynn continued to provide Briana with any financial support. So long as Murphy was fulfilling his obligation to support Lauren, to require Murphy to also pay child support for Briana would not benefit Briana and would provide Newlynn with an undeserved windfall. Applying Rule 90.3(h)(3)'s preclusion provision to cases like Murphy's is thus supported by the rationale behind Alaska's child support laws.

Moreover, to apply Rule 90.3(h)(3) to de facto custody changes of fewer than all children would not work a substantial change in the law. Alaska Statute 25.27.020(b) already directs CSED, "[i]n determining the amount of money an obligor must pay to satisfy the obligor's immediate duty of support," to "consider all payments made by the obligor directly to the obligee or to the obligee's custodian before the time the obligor is ordered to make payments to the agency."[18] Even the Commentary to Rule 90.3(h)(3) acknowledges that, as an alternative to preclusion, AS 25.27.020(b) might allow a "reduction of support owed ... when the obligor assumes custody of one or more of the children." Murphy's direct support of Briana was the effective equivalent of payments "directly to the obligee or to the obligee's custodian."[19] Precluding Newlynn from collecting child support arrears accrued for Briana's care, under Civil Rule 90.3(h)(3), would thus be functionally similar to giving Murphy credit for all payments made directly for Briana's support, under AS 25.27.020(b).

Precedent, reason, and policy thus all support the application of Rule 90.3(h)(3)'s preclusion provision to cases like Murphy's. If on remand the trial court finds preclusion to be established as a defense by clear and convincing evidence, we conclude that Rule 90.3(h)(3) would preclude Newlynn from collecting arrearages that had accumulated for Briana's support, although Murphy would still be required to pay the arrearages that had accumulated for Lauren's support.

## V. CONCLUSION

Because a waiver of child support is invalid until reviewed and approved by a court, and because even a court-approved waiver will be given only prospective effect, we agree with the superior court that Newlynn's waiver did not prevent her from collecting child support arrearages from Murphy. As a matter of law, however, we conclude that Rule

---

14. *See Johnston v. Johnston*, 196 Ill.App.3d 101, 142 Ill.Dec. 743, 553 N.E.2d 93, 96–97 (1990) (cited by Alaska R. Civ. P. 90.3, Commentary X.C.).

15. *See id.*

16. *Bennett v. Bennett*, 6 P.3d 724, 727 (Alaska 2000).

17. *See id.* at 727.

18. *Cf. State, Dep't of Revenue, Child Support Enforcement Div. v. Gause*, 967 P.2d 599, 603–04 n. 33 (Alaska 1998) (encouraging the superior court to consider whether parent should receive child support arrearages credit under AS 25.27.020(b) for months youngest daughter resided with him).

19. AS 25.27.020(b).

90.3(h)(3) could preclude the collection of child support arrearages accumulated for the support of fewer than all of the children who are the subject of a support order. We thus REVERSE the order denying Murphy's motion for preclusion, and REMAND for further proceedings consistent with this opinion.