Gary E. WEBB, Appellant,

v.

STATE of Alaska, DEPARTMENT OF REVENUE, CHILD SUPPORT ENFORCEMENT DIVISION ex rel. Michelle WEBB, n/k/a Michelle Key, Appellee.

No. S–11160.

Supreme Court of Alaska.

Sept. 9, 2005.

Bryan T. Schulz, Ketchikan, for Appellant.

Susan L. Daniels, Assistant Attorney General, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

Gary Webb, a father of two children, did not pay child support during a period when his children were in the custody of their grandmothers. He claims that the children's mother, to whom he owed the support payments, is precluded under Civil Rule 90.3(h)(3) from collecting the arrears accumulated during that time. The superior court disagreed with Webb, concluding that Rule 90.3(h)(3) provides for preclusion only when the obligor parent has primary physical custody of the children. We agree with the superior court and affirm.

## II. FACTS AND PROCEEDINGS

### A. Factual History

Gary Webb and Michele Key were married January 29, 1988. They had two daughters, Megan, born on April 21, 1988 and Sarah, born on March 11, 1989. The marriage was dissolved on April 12, 1990. Key was granted legal and primary physical custody of the children and Webb was ordered to pay $418 a month in child support. At the time of their divorce, the parties were living on Fort Richardson. Key later moved to Maine and Webb moved to Ward Cove. Courts in Maine later appointed the daughters' grandmothers as guardians in two separate proceedings.[1] Roberta Webb, Gary's mother, was made guardian of Sarah in 1993, an arrangement which lasted until the guardianship was terminated in 2001. Sarah then returned to living with Key. In 1995 Megan was placed in the guardianship of Sheila Smith, Key's mother, who also resides in Maine. A petition to terminate this guardianship was filed in Maine in 1997. Although the termination was never issued, it is undisputed that Megan returned to live with Key. Thus, between 1993 and 2001, Key never had custody of both daughters at once, and between 1995 and 1997, she had custody of neither of them.

According to the Child Support Enforcement Division (CSED), Webb made no child support payments to Key between 1993 and 2001. He made some payments to his mother, Sarah's guardian, which CSED eventually credited against his arrears.[2]

### B. Procedural History

On October 24, 2001, when both children were back in Key's custody, Webb, acting pro se, moved to modify the amount of arrears he owed, claiming that he should not have to pay for the period in which both children were in their grandmothers' custody. The superior court read his motion as requesting relief for the years 1993 through 1997, which included a period of time when Megan was still living with Key. In response, CSED calculated that Webb owed $6,001.53 in arrears. Webb assented to that figure and the superior court approved it.

CSED later returned to court, moving under Civil Rule 60(b)(1) to set aside the arrears order because of an error in its calculation. The agency claimed that Webb in fact owed $72,105.22 but allowed that Webb might be able to show that he had made more payments than had been accounted for. In his opposition to the motion, Webb renewed his argument that he should not have to pay arrears for the period when both girls were with their grandmothers and should only have to pay reduced arrears for the time when Megan was living with Key. At this time, Webb was represented by counsel and argued that Civil Rule 90.3(h)(3) precluded the collection of these arrears. He also claimed that he had made payments that CSED failed to credit when it computed the arrears. After an evidentiary hearing apparently resolved the question of credit due to Webb, the superior court decided that Civil Rule 90.3(h)(3) did not apply and that CSED was therefore not precluded from collecting arrears for the challenged period. The court entered a final order setting the amount owed at $51,058.14.

Webb appeals.

## III. STANDARD OF REVIEW

▮ The question whether preclusion applies in this case depends on the application of a court rule that determines the "correct method of calculating child support"; it is thus a question of law we review de novo.[3] We will adopt "the rule of law most persuasive in light of precedent, reason, and policy."[4]

---

1. Both parties agree that the State of Maine paid public assistance on behalf of the children from 1991 through 1993 but was reimbursed in full for this amount by Webb. Maine has not requested additional enforcement services from Alaska and has sought no further reimbursement from Webb.

2. Civil Rule 90.3(h)(3) uses the term "arrearages." This court has used both "arrearages" and "arrears." *Compare Cline v. Cline,* 90 P.3d 147, 151 (Alaska 2004) *with Murphy v. Newlynn,* 34 P.3d 331, 333 (Alaska 2001).

3. *Murphy,* 34 P.3d at 333.

4. *Id.*

## IV. DISCUSSION

### A. Rule 90.3(h)(2) Does Not Preclude an Obligee Parent from Collecting Arrears Accumulated While the Children Are in the Custody of a Third Party Who Is Not the Obligor Parent.

Webb seeks a retroactive modification of his child support obligation and asks us to eliminate or significantly reduce his liability for the child support debt that accrued over a period of 101 months when one or both of his daughters were living with their grandmothers. In general, Civil Rule 90.3(h)(2) bars retroactive modification. It is subject to two exceptions, one of which is relevant here.[5] Civil Rule 90.3(h)(3) provides in relevant part:

> *Preclusion.* The court may find that a parent and a parent's assignee are precluded from collecting arrearages for support of children that accumulated during a time period exceeding nine months for which the parent agreed or acquiesced to the obligor exercising primary custody of the children. A finding that preclusion is a defense must be based on clear and convincing evidence.[6]

Under this rule, if the child or children[7] live with the obligor parent, with the consent of the obligee parent, for a period greater than nine months, and the obligor parent does not make support payments during that time, then the obligee parent may not collect the arrears.[8] Webb claims that this rule should preclude Key from collecting the arrears accumulated while the daughters were living with their grandmothers. We disagree.

### 1. The plain language and policy of Rule 90.3(h)(3) do not support preclusion in this case.

A prerequisite for any interpretation of a court rule is that it have a basis in the rule's text.[9] Webb's proposed interpretation of Civil Rule 90.3(h)(3), to allow preclusion for a period when the children are in the custody of a third party, is not permitted by the language of the rule. The rule provides for preclusion when the children have lived with the obligor. Thus, the plain language of the rule does not support Webb's interpretation. Rule 90.3(h)(3) only allows preclusion in one situation: when the children have lived with the parent who owes child support. Megan and Sarah never lived with Webb. Under the plain language of the rule, there is no basis to preclude Key from collecting support.[10]

We have previously stated that when "a straightforward application of [a court] rule yields [an] extreme or absurd ... result," it may "require us to bend the plain language of the rule."[11] But requiring Webb to pay the child support he owes does not lead to an extreme or absurd result. First, when children live with a third party, both parents have the duty to support the children.[12] Thus, Webb was not absolved of a duty to support his children merely by their living with a third party rather than their mother. And although it is true that Key will be

---

**5.** Alaska Civil Rule 90.3(h)(2) provides: *"No Retroactive Modification.* Child support arrearage may not be modified retroactively, except as allowed by AS 25.27.166(d)." AS 25.27.166(d) permits retroactive modification if paternity is disestablished.

**6.** In a technical sense, this provision does not permit a retroactive modification of the child support award because it does not extinguish the child support debt. It simply bars the creditor from collecting the debt. In terms of pleading, the rule provides a defense to collection, rather than a means of disproving the debt.

**7.** *See Murphy,* 34 P.3d at 335 (allowing partial preclusion when only one of two children lived with obligor parent).

**8.** *See* Alaska Civil Rule 90.3(h)(3); *Murphy,* 34 P.3d at 335.

**9.** *Cf. West v. Buchanan,* 981 P.2d 1065, 1069–71 (Alaska 1999); *In re K.A.H.,* 967 P.2d 91, 93–94 (Alaska 1998).

**10.** Alaska Civil Rule 90.3(h)(3).

**11.** *Mundt v. Northwest Explorations, Inc.,* 963 P.2d 265, 270 (Alaska 1998).

**12.** *See Matthews v. Matthews,* 739 P.2d 1298, 1299 (Alaska 1987) (superseded on other grounds by Civil Rule 90.3 and *Vachon v. Pugliese,* 931 P.2d 371 (Alaska 1996)) (explaining that "[a] parent's duty of support encompasses a duty to reimburse other persons who provide the support the parent owes") (citation omitted).

compensated by Webb for past child support expenses that were actually paid by the grandmothers, any windfall to Key might be temporary, as the grandmothers will be able to seek reimbursement from Key for child support received for the period of time the children were in the grandmothers' care.[13] Finally, Key is currently caring for the children, who are the beneficiaries of the child support order.[14] In the event either of the grandmothers chooses not to pursue compensation from Key, the children should benefit from Webb's payment of child support arrears to Key, their primary custodian, for obligee parents are required by the statute to administer support funds on the children's behalf.[15]

Retroactively modifying the child support order to permit Webb to evade his child support obligations would result in a windfall to Webb and deprive the children of funds to which they are entitled. "Child support awards, by their very definition, are intended to benefit the child, not provide a windfall to the parent."[16] During the years that Webb was not meeting his obligations, his daughters were not receiving the benefit the support order was designed to provide. We therefore conclude there is no reason to go beyond the words of the rule and allow preclusion.[17]

### 2. Absent a modification of the support order, the original order is enforceable.

We agree that Webb could have sought modification of the support order given that there was a change in the physical custody of the children. But he chose to wait until his daughters had returned to live with Key before seeking to modify child support. As we previously held in *Karpuleon v. Karpuleon,* "the burden is on the parents to promptly apply for modification" when a child changes residency.[18] "If the parties do not follow the custody order, they should ask the court to enforce the custody order or should move to modify the child support order."[19] Court-ordered child support may only be modified or terminated by the court; a child support order does not automatically terminate simply because a third party assumes custody of the children.[20] "The obli-

---

13. *Id.* (noting that "[a] claim for reimbursement belongs to whomever supported the children, and is simply an action on a debt").

14. *See State, Dep't of Revenue, Child Support Enforcement Div. ex. rel. Valdez v. Valdez,* 941 P.2d 144, 154 n. 14 (Alaska 1997) ("The right to support is that of the child . . . .").

15. *See* AS 25.27.060(a) ("[A]n order of support establishes a relationship by which the custodian of the child is the administrator for the purposes of administrating child support on behalf of the child.").

16. *Bennett v. Bennett,* 6 P.3d 724, 727 (Alaska 2000).

17. Webb relies on our decision in *Murphy,* 34 P.3d at 331, to argue that Rule 90.3(h)(2) should be extended beyond its language. In *Murphy,* we held that the obligee parent was precluded from collecting arrears for the child who lived with the obligor, reasoning in part that requiring the obligor parent to pay child support while he was actually supporting the child "would not benefit [the child] and would provide [the obligee parent] with an undeserved windfall." *Id.* at 335. As an initial matter, we note an essential factual difference between *Murphy* and this case: in *Murphy,* the obligor parent contested paying child support because he had primary physical custody of one of the children. *Id.* at 332–33.

Webb never had primary physical custody of either of his children nor does he claim to have been actually supporting either child during this period. Moreover, our decision in *Murphy* relied on the principle that "child support awards . . . are intended to benefit the child." *Id.* at 335 (quoting *Bennett,* 6 P.3d at 727). And here, as we clarified above, any windfall to Key would be temporary because the grandmothers have a legal right to the support arrears. On remand, the superior court has the discretion to structure its order to ensure that the arrears are spent for the children's benefit. *See, e.g., State, Dep't of Soc. Servs., Cedar County ex rel. Brecht v. Brecht,* 255 N.W.2d 342, 345 (Iowa 1977) ("Reasonable and adequate safeguards should be imposed upon [child support] lump sum payments to assure their eventual and orderly distribution for the needs of the children.").

18. 881 P.2d 318, 320 (Alaska 1994).

19. *Turinsky v. Long,* 910 P.2d 590, 595 (Alaska 1996) (holding child support arrears should be based on the valid custody and visitation order issued by the court, not on the amount of visitation actually exercised).

20. *See In re Marriage of Gregory,* 230 Cal.App.3d 112, 281 Cal.Rptr. 188, 190 (1991) ("a parent must look for assistance from the courts in order

gation to pay child support pursuant to a court order generally continues until the child reaches age 18 or until the happening of any contingency specified in the court order."[21] And several courts have concluded that the death of a non-custodial parent, the death of a custodial parent, the emancipation of the child, or the appointment of a third party as a temporary conservator for the child does not terminate the support obligation.[22] Thus, a court-ordered change of custody arising out of a guardianship proceeding, as in this case, does not automatically extinguish a valid support order.

■ Webb did not petition the court to change the existing child support order throughout the eight-year period when his daughters were living with their grandmothers in Maine. Webb's failure to seek modification of the support order may not now be used to contest the child support arrears he owes.[23] Webb relies on *Turinsky v. Long*[24] and *Bennett v. Bennett*[25] to argue that support orders have no effect when custody of the children changes. But in *Turinsky*, we explained that "[c]hild support awards should be based on a custody and visitation order," not on the visitation actually exercised.[26] This language supports the State's position that retroactive modification is not permissible and that the superior court must always look to the most recent child support order. And *Bennett* reiterates our holding in *Turin-*

*sky* and explains that this principle was intended "to encourage parents to either comply with court orders or move to modify them in a timely manner."[27]

## V. CONCLUSION

Because the language of Civil Rule 90.3(h)(3) does not permit preclusion when the obligor parent did not have physical custody of the children, we AFFIRM the superior court's decision.

---

to modify or terminate a support order"); *Abrams v. Connolly,* 781 P.2d 651, 656 (Colo. 1989) (even following the death of the custodial parent, the non-custodial parent must resort to the court if modification of the support award is justified).

21. *In re Marriage of Gregory,* 281 Cal.Rptr. at 190 (concluding that the death of the custodial parent does not terminate the child support order); *see also O'Brien v. O'Brien,* 136 Md.App. 497, 766 A.2d 211, 215 (Md. Spec.App.2001, *rev'd on other grounds,* 367 Md. 547, 790 A.2d 1 (2002) (same)).

22. *See, e.g., Stein v. Hubbard,* 25 Cal.App.3d 603, 102 Cal.Rptr. 303, 303–04 (1972) (court-ordered child support survives death of non-custodial parent); *In re Marriage of Gregory;* 281 Cal.Rptr. at 190 (death of custodial parent does not terminate support order); *In re Marriage of Beilock,* 81 Cal.App.3d 713, 146 Cal.Rptr. 675, 684 (1972) ("emancipation does not automatically terminate the parent's obligation of support") (internal quotations and citations omitted); *Matter of Mar-*

*riage of Henick,* 125 Or.App. 563, 865 P.2d 1336, 1337–38 (1993) (appointment of temporary conservator did not end father's obligation to provide support).

23. We also note that the child support order in this case imposes a support obligation on Webb; it does not specify that this support obligation is to be paid only to Key. The order would therefore permit CSED to substitute a third-party custodian as payee. The support order in this case provides for support to continue until "each child reaches the age of eighteen, is otherwise legally emancipated or dies."

24. 910 P.2d 590.

25. 6 P.3d 724.

26. 910 P.2d at 595.

27. *Bennett,* 6 P.3d at 727 (citing *Turinsky,* 910 P.2d at 594–95).