*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CYNTHIA FERNANDEZ, | ) | |
| | ) | Supreme Court No. S-15729 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-86-09323 CI |
| v. | ) | |
| | ) | O P I N I O N |
| DAVID M. FERNANDEZ, | ) | |
| | ) | No. 7040 – August 28, 2015 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Patrick J. McKay, Judge.

Appearances: Cynthia Fernandez, pro se, Chugiak, Appellant. Roberta C. Erwin and Robert C. Erwin, Palmier~Erwin, LLC, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

FABE, Chief Justice.

I.      INTRODUCTION

A husband and wife filed for dissolution in 1986 and the court awarded the wife monthly child support. But the parties did not actually separate until 2007, save a period apart from 1997 to 2001. Their dissolution was a sham, structured to shield otherwise marital property from the husband's bankruptcy. After the parties actually

separated in 2007, the wife contacted the Child Support Services Division to enforce past due child support dating back to 1986, which totaled nearly $118,000. The husband filed a motion for relief from the child support judgment. The superior court granted the motion after concluding that the parties' original dissolution had been obtained by a fraud on the court. The superior court used its discretion under Alaska Civil Rule 60(b)(6) to set aside the 1986 dissolution and order a division of property and child support as of 2007, when the parties actually separated. The wife appeals. Because the parties' 1986 dissolution used the court system as a tool to defraud creditors and thus undermined the court's integrity, we affirm the superior court's conclusion that the dissolution was a fraud on the court under Rule 60(b)(6).

## II.    FACTS AND PROCEEDINGS

Cynthia and David Fernandez were married in 1979 and had two children together, one born in 1983 and the other born in 1985. They dissolved their marriage in 1986. As part of the dissolution the parties agreed that David would pay Cynthia monthly child support. But Cynthia and David did not actually end their relationship in 1986; they agree that they only filed for dissolution to shield some marital assets from creditors as part of David's bankruptcy. They continued to live together as husband and wife until 1997, during which time David provided financial support for the family. Cynthia and David separated from 1997 to 2001 and David paid child support to Cynthia during that time. They resumed living together as husband and wife from 2001 until 2007 when they separated for good.

In 2010 Cynthia contacted the Child Support Services Division (CSSD) to enforce David's child support obligation from 1986 to 2007, which totaled roughly $118,000. David was notified of Cynthia's support enforcement action through an August 2010 letter from CSSD. In September 2010 David moved for relief from the child support order.

On August 26, 2014, the superior court concluded that "the dissolution proceeding was in essence a sham on the court perpetrated by both parties." Under the clear and convincing standard it concluded that there was a "fraud upon the court" by both parties because they participated in the sham dissolution which affected David's creditors. The superior court stated that "the conduct was egregious and involved a corruption of the judicial process," and that "it was an intentional plan and scheme." It found that the "appropriate relief" — which it concluded was to "set aside the [decree] of dissolution" — "may be afforded under Civil Rule 60(b)(6)."

Rule 60(b) allows the court to set aside a final judgment for various reasons, such as newly discovered evidence or mistake, and for "any other reason justifying relief from the operation of the judgment."[1] The trial court found that it was "equitable to set aside the decree of dissolution, child support judgments, and property judgments entered in this matter under [Rule] 60(b)(6)." It then "divide[d] [the] property and determine[d] child support as of the date of the parties' final separation in June 2007," making that the effective date of the parties' dissolution.

The superior court reasoned that if the sham dissolution remained intact, both parties would have "secur[ed] an unfair advantage in varying ways":

> Ms. Fernandez would receive or remain entitled to a property which was jointly purchased and contributed to by Mr. Fernandez.[2] Ms. Fernandez would also receive a windfall child support judgment including multiple years when the parties lived together and held each other out as husband and wife, and Mr. Fernandez jointly contributed to the support of the household and children. Mr. Fernandez would receive all

---

[1]   Alaska R. Civ. P. 60(b)(6).

[2]   This is the second appeal stemming from the parties' dissolution. *See Fernandez v. Fernandez*, 312 P.3d 1098 (Alaska 2013). The first appeal concerned procedural matters largely unrelated to this appeal.

equity and title in [one] property as well as not be[ing] accountable for other assets which were jointly purchased during the period of time that they remained holding themselves out as husband and wife.

The parties submitted a joint spreadsheet detailing their marital property, which the trial court used "to divide the property that existed as of June 2007" based on the "statutory factors of property settlement." The trial court stated that its intention was "to draft a resolution and distribution of property that did not give either side a windfall from their fraudulent dissolution." Among other findings related to specific personal property items, the superior court found that "an equalizing payment of $5,916.97 will be due from Ms. Fernandez to Mr. Fernandez in order to reach a 55/45 division of the estate."

The superior court's ruling in that matter was consolidated with its decision on an April 2014 complaint that Cynthia filed to set aside quitclaim deeds that transferred property from David to his new wife for $10. Cynthia alleged that the conveyances were made by David with the intent to hinder, delay, or defraud her as a creditor based on the child support payments David owed Cynthia. The superior court found that the transfer of property "was done with the intent to keep the majority of the property unavailable to the recently renewed child support case," but that no remedy was required because David did not actually owe Cynthia child support. It thus rejected Cynthia's fraudulent conveyance claims.

Cynthia filed a motion for reconsideration, or in the alternative, a stay, which the superior court denied. She appeals.

## III. STANDARD OF REVIEW

"We will not disturb a trial court's ruling on a Rule 60(b) motion unless an abuse of discretion is demonstrated."[3] We also review for abuse of discretion "[a] superior court's determination as to whether fraud upon the court has occurred."[4] "We will find an abuse of discretion when the decision on review is manifestly unreasonable."[5]

## IV. DISCUSSION

Cynthia challenges the superior court's decision to set aside the 1986 dissolution and child support judgments and arrears under Civil Rule 60(b)(6) based on its finding of fraud on the court.

### A. The Superior Court Did Not Abuse Its Discretion In Granting Relief Under Rule 60(b)(6).

The superior court granted relief under Rule 60(b)(6) for most of David's legal obligations flowing from the sham dissolution, which it found was a fraud on the court. Although David requested relief from the child support obligation and arrears, he did not frame his request in terms of Rule 60(b). Cynthia argues that the superior court cannot grant sua sponte relief under Rule 60(b)(6) and further contends that though David might have otherwise obtained relief under Rule 60(b)(3), which concerns relief from judgment based on allegations of fraud, misrepresentation, or other misconduct,

---

[3]     *Morris v. Morris*, 908 P.2d 425, 427 (Alaska 1995); *see also Hatten v. Hatten*, 917 P.2d 667, 670 n.3 (Alaska 1996) ("[R]elief from judgment is addressed to the sound discretion of the trial court, and the court's ruling will not be disturbed except upon a showing of abuse of discretion.").

[4]     *Alaska Fur Gallery, Inc. v. First Nat'l Bank Alaska*, 345 P.3d 76, 83 (Alaska 2015); *see also Allen v. Bussell*, 558 P.2d 496, 499-500 (Alaska 1976).

[5]     *Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, ___ P.3d ___, Op. No. 7003, 2015 WL 1958657, at *3 (Alaska May 1, 2015).

claims under that provision would be time barred by the rule's one-year time limit. She also argues that relief was unavailable under Rule 60(b)(6) because David's motion for relief from the child support order was not made within a "reasonable time," as the rule requires. Finally, she argues that the superior court's ruling impermissibly "rewarded David for his fraud" and thus violated the doctrine of *in pari delicto potior est conditio defendentis* (*in pari delicto*), which precludes wrongdoers from recovering damages from a wrongdoing where they are at "equal or mutual fault" as the defendant.[6] David asks this court to affirm the superior court's Rule 60(b)(6) relief and argues that the superior court acted within its discretion based on the evidence presented at trial.

"The purpose of [Rule] 60(b) is to provide relief from judgments which, for one reason or another, are unjust."[7] Rule 60(b) sets forth six reasons for relieving a party from the effect of a "final judgment, order, or proceeding."[8] Reasons (3) and (6), which recognize two categories of fraud, are relevant here: they encompass

---

[6] BLACK'S LAW DICTIONARY 911 (10th ed. 2014).

[7] *Wellmix, Inc. v. City of Anchorage*, 471 P.2d 408, 411 n.13 (Alaska 1970). "[C]hild support orders are treated like judgments," and thus "we [have held] that trial courts may look to Civil Rule 60(b) for guidance in determining when relief is available." *State, Dep't of Revenue, Child Support Enforcement Div. v. Maxwell*, 6 P.3d 733, 736 (Alaska 2000).

[8] In a divorce proceeding where marital property has been divided, a divorce decree incorporating a property judgment constitutes a final judgment and may be modified to the same extent as any equitable decree of the court. . . . Other than a[n Alaska] Civil Rule 77(k) motion for reconsideration, which must be made within ten days of the court's order, an Alaska Civil Rule 60(b) motion provides the only available means for seeking relief from a final judgment of property division.

*Williams v. Williams*, 252 P.3d 998, 1005 (Alaska 2011) (footnote omitted).

"(3) fraud . . . , misrepresentation, or other misconduct of an adverse party" and "(6) any other reason justifying relief from the operation of the judgment." "For most fraud, such as that perpetrated by one party against another, a party can obtain relief from a judgment by moving under Rule 60(b)(3)."[9] Such motions must be made within one year after entry of the judgment.[10] In contrast, the savings clause at Rule 60(b)(6) "recognizes the inherent power of courts to set aside judgments for fraud upon the court"[11] and contains no time limit.[12] "A party can invoke subsection (b)(6) only if none of the other five clauses [of Rule 60(b)] apply and extraordinary circumstances exist."[13]

We have held that because Rule 60(b)(6) is "a catch-all provision [it] 'should be liberally construed to enable court[s] to vacate judgments *whenever* such action is necessary to accomplish justice.' "[14] But in light of the two distinct fraud

---

[9]     *Blanas v. Brower Co.*, 938 P.2d 1056, 1062 (Alaska 1997).

[10]     Alaska R. Civ. P. 60(b) ("The motion shall be made . . . for reasons (1), (2) and (3) not more than one year after the date of notice of the judgment or orders . . . .").

[11]     *Blanas*, 938 P.2d at 1062; *see also Allen v. Bussell*, 558 P.2d 496, 499 (Alaska 1976) ("Civil Rule 60(b) specifically notes that although its subsection (3) provides a method by which a judgment can be reopened because of 'fraud . . . , misrepresentation, or other misconduct of an adverse party,' the rule is not to be construed as a limitation of the court's power 'to set aside a judgment for fraud upon the court.' " (omission in original)).

[12]     *See Mallonee v. Grow*, 502 P.2d 432, 437 (Alaska 1972) ("[T]he one-year time limitation does not apply to proceedings to correct orders obtained by fraud upon the court.").

[13]     *Juelfs v. Gough*, 41 P.3d 593, 597 (Alaska 2002) (quoting *Lacher v. Lacher*, 993 P.2d 413, 419 (Alaska 1999) (internal quotation marks omitted)).

[14]     *Clauson v. Clauson*, 831 P.2d 1257, 1261 (Alaska 1992) (emphasis in original) (quoting *O'Link v. O'Link*, 632 P.2d 225, 230 (Alaska 1981)); *see also Norman*
(continued...)

provisions of Rule 60(b), "[n]ot all fraud is 'fraud on the court.' "[15]

### 1. Fraud on the court

Cynthia argues that the superior court incorrectly concluded that David and Cynthia's 1986 dissolution was a fraud on court as contemplated by Rule 60(b). She asserts that fraud on the court should be "narrowly construed to embrace only that type of conduct which defiles the court itself." That is precisely the type of conduct at issue here.

We recently considered what constitutes fraud on the court in *Alaska Fur Gallery, Inc. v. First National Bank Alaska*:

> "Fraud upon the court" is an equitable doctrine that allows a court to set aside a judgment obtained as a result of fraudulent conduct. It is an exception to the general rule that courts [will] not alter or set aside their judgments after the expiration of the term at which the judgments were finally entered. In Alaska, the doctrine is codified in Alaska Civil Rule 60(b), whereby a court has the power to set aside a judgment for fraud upon the court. [T]he party claiming a fraud on the court bears the burden of proving the claim by clear and convincing evidence.
>
> We have noted that specific attempts to define fraud on the court are not particularly helpful, but have nevertheless

---

[14](...continued)
*v. Nichiro Gyogyo Kaisha, Ltd.*, 761 P.2d 713, 715 (Alaska 1988) ("This clause of Rule 60(b) should be liberally construed to do justice where extraordinary circumstances demand it.").

[15] *Great Coastal Express, Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 675 F.2d 1349, 1356 (4th Cir. 1982); *see also Kerwit Med. Prods., Inc. v. N. & H. Instruments, Inc.*, 616 F.2d 833, 836-37 (5th Cir. 1980) ("Only a small number of those acts that can be considered fraud amount to 'fraud upon the court,' as that phrase is used in [federal] Rule 60(b)."). Federal Rule of Civil Procedure 60(b) is substantively parallel to Alaska Rule of Civil Procedure 60(b).

consistently recognized that [a] fraud upon the court may only be found in the most egregious circumstances involving a corruption of the judicial process itself. Similarly, we have adopted the view that the drafters of Rule 60(b) viewed fraud upon the court as referring to very unusual cases involving far more than an injury to a single litigant.[16]

Elsewhere we have noted that fraud on the court "includes behavior which defiles the court itself . . . . The adjudicative integrity of a court may be defiled by the behavior of parties or attorneys which results in depriving adverse parties of substantive rights."[17]

In *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, the United States Supreme Court addressed the question of fraud on the court when considering a fraudulently prepared and published article used to support a pending application before the U.S. Patent Office.[18] The Court held that the lower courts should have set aside a patent infringement judgment obtained with the fraudulently prepared article that had supported the patent.[19] It held that the party's actions regarding the article were a fraud on the court because they were "a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals."[20] The *Hazel-Atlas* Court emphasized that

> [t]his matter does not concern only private parties. There are issues of great moment to the public in a patent

---

[16]    345 P.3d 76, 85-86 (Alaska 2015) (alterations in original) (internal quotation marks omitted).

[17]    *Mallonee*, 502 P.2d at 438.

[18]    322 U.S. 238, 240 (1944).

[19]    *Id.* at 250.

[20]    *Id.* at 245.

suit. Furthermore, tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society.[21]

We adhered to these principles in *O'Link v. O'Link* when we rejected a claim of fraud on the court based on a party's failure to disclose evidence regarding property value, ruling that the matter "was only between the two parties and did not involve a direct assault on the integrity of the judicial process."[22] Other jurisdictions have similarly observed that "fraudulent conduct such as perjury or non-disclosure by a party, standing alone, is insufficient to make out a claim for fraud on the court"[23] because it "amounts to [nothing] more than fraud involving injury to a single litigant."[24]

Here, the superior court did not abuse its discretion in concluding that David and Cynthia's 1986 dissolution was a fraud on the court. It determined that the 1986 dissolution was a sham because the parties only filed for dissolution to shield otherwise marital property from David's bankruptcy, a motivation that neither party contests. Because David and Cynthia dissolved their marriage to protect marital property from collection by creditors, their fraud "does not concern only private parties"[25] and

---

[21] *Id.* at 246 (citation omitted).

[22] 632 P.2d 225, 231 (Alaska 1981).

[23] *Cvitanovich-Dubie v. Dubie*, 254 P.3d 439, 456 (Haw. 2011).

[24] *Gleason v. Jandrucko*, 860 F.2d 556, 560 (2d Cir. 1988).

[25] *Hazel-Atlas Glass Co.*, 322 U.S. at 246.

"involve[s] far more than an injury to a single litigant."[26] Like the patent infringement proceedings which were the focus of the fraud on the court in *Hazel-Atlas*, bankruptcy proceedings are "institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society."[27] Cynthia and David disrupted this good order by attempting to shield assets from creditors through a sham dissolution. This behavior by the parties sullied "[t]he adjudicative integrity"[28] of the superior court because it deprived adverse parties — creditors — of their substantive rights to collect debts. Thus the superior court did not abuse its discretion in determining that Cynthia and David's sham dissolution was a fraud on the court.

### 2. Relief under Rule 60(b)(6)

In *Juelfs v. Gough* we held that "[u]nlike Rule 60(b)(3) fraud, which can be brought by the court at any time, subsection (6) requires a motion be made by one of the parties."[29] Cynthia argues that the superior court therefore abused its discretion by granting David relief under Rule 60(b)(6) when David did not explicitly rely on that provision. But *Juelfs* did not require that a motion for relief from judgment specify that such relief is sought under Rule 60(b)(6), and there we construed a husband's opposition to his former wife's action as such a request even though the husband did not pinpoint

---

[26]    *Alaska Fur Gallery, Inc. v. First Nat'l Bank Alaska*, 345 P.3d 76, 86 (Alaska 2015) (quoting *Murray v. Ledbetter*, 144 P.3d 492, 499 (Alaska 2006)).

[27]    *Hazel-Atlas Glass Co.*, 322 U.S. at 246.

[28]    *Mallonee v. Grow*, 502 P.2d 432, 438 (Alaska 1972).

[29]    41 P.3d 593, 597 (Alaska 2002) (footnote omitted).

Rule 60(b)(6) in his request for relief.[30] We now clarify that the trial court can grant a motion for relief from a judgment, order, or proceeding if it was based on a fraud on the court, even if a party's request for relief does not take the explicit form of a Rule 60(b)(6) motion. This authority is necessary for the superior court to meet its responsibility to uphold the court's integrity.

### 3. Reasonable time for granting relief under Rule 60(b)(6)

Cynthia also argues that relief was unavailable under Rule 60(b)(6) because David's motion for relief was not made within a "reasonable time," as the rule requires. David responds that the superior court ruled properly within its broad discretion to grant relief.

Cynthia suggests that the time frame we should use to evaluate whether David sought relief in a "reasonable time" is the time between the parties' 1986 dissolution and David's 2010 motion seeking relief from the child support that had accrued since that sham dissolution — a 24-year gap. Conversely, David argues that the time frame at issue is the brief, one-month time period between when he was notified of Cynthia's child support enforcement action in August 2010 through a letter from CSSD and his September 2010 filing of a suit to contest the support collection. David argues that "[t]he issue of child support never came up when the parties were living together as husband and wife until 2007. When the issue arose in 2010 it was promptly contested within a reasonable time."

---

[30]    *See id.* (noting that an opposition in which a party claimed sole custody of a pet was in the pet's best interest should be "construe[d] . . . as such a request" under Rule 60(b)(6) because "[s]uch language is enough to warrant the trial court's action").

Relief under Rule 60(b)(6) must be requested within a "reasonable time" and "be made seasonably in light of all the circumstances and interests involved."[31] "What constitutes reasonable time necessarily depends on the facts in each case. Courts consider whether the party opposing the motion has been prejudiced by the delay in seeking relief and whether the moving party had some good reason for failing to act sooner."[32] We have held that the trial court did not abuse its discretion by finding reasonable delays ranging from 17 months[33] to 17 years.[34] In *Mallonee v. Grow*, we noted that "[t]he time limitations on actions or motions seeking the rectification of injustices arising from judgments or orders obtained through fraud on the issuing court should be as broad as that court's power to correct such wrongs."[35]

The superior court did not abuse its discretion in granting Rule 60(b)(6) relief. Cynthia, the party opposing relief from the child support order, was not prejudiced by the delay because she never sought child support during the years when David was living with her and they were holding themselves out as husband and wife.

---

[31] *Mallonee*, 502 P.2d at 437.

[32] *Rowland v. Monsen*, 135 P.3d 1036, 1040 (Alaska 2006) (quoting *Harris v. Westfall*, 90 P.3d 167, 173 (Alaska 2004)); *see also Mallonee*, 502 P.2d at 437 ("When, as in the instant case, we must determine whether or not a time period is reasonable we must consider the interests of the parties and of the courts.").

[33] *Cox v. Floreske*, 288 P.3d 1289, 1292-93 (Alaska 2012) (motion under Rule 60(b)(5)).

[34] *See Inman v. Inman*, 67 P.3d 655, 659 (Alaska 2003) (motion under Rule 60(b)(4)).

[35] 502 P.2d at 437.

### 4.    *In Pari Delicto*

Finally, Cynthia argues that the superior court's ruling impermissibly "rewarded David for his fraud" and thus violated the doctrine of *in pari delicto*, which precludes court remedies for wrongdoers in the case of "equal or mutual fault."[36]  That defense has been applied to provide that "where the parties to a suit have been guilty [of] fraud in connection with the subject matter of the litigation and are *in pari delicto*, the court of equity . . . will leave them as it finds them, refusing its aid to either."[37]  The doctrine of *in pari delicto* is "grounded on two premises:  first, that courts should not lend their good offices to mediating disputes among wrongdoers; and second, that denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality."[38]

But the doctrine does not limit the superior court's authority to right wrongs in fulfillment of its responsibility to uphold the court's integrity, nor should it be used to require that one wrongdoer pay child support to the other when the parties were not living apart and continued to function as a marital unit.  Here, David was "an active, voluntary participant in the unlawful activity that is the subject of the suit,"[39] and so was Cynthia.  But Cynthia and David's fraud offended the integrity of the bankruptcy proceedings and creditor protections, and thus may have interfered with the protection of the investing public.  As a result, the doctrine of *in pari delicto* does not preclude the

---

[36]    BLACK'S LAW DICTIONARY 911 (10th ed. 2014).

[37]    *Baker v. Nason*, 236 F.2d 483, 489 n.8 (5th Cir. 1956) (quoting 23 AM. JUR. FRAUD AND DECEIT § 183 (1956)).

[38]    *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985) (footnote omitted).

[39]    *Pinter v. Dahl*, 486 U.S. 622, 633 (1988).

superior court's remedy here.[40]

B.    The Superior Court Did Not Abuse Its Discretion In Setting Aside Child Support Arrears And Ordering Child Support As Of The 2007 Date Of The Parties' Final Separation.

The superior court ordered that David only owed child support as of 2007,[41] the date when the parties actually separated, instead of 1986, the date of the parties' sham dissolution. Cynthia argues that this retroactive vacation of child support violates federal and state law. She points to Alaska Civil Rule 90.3(h)(2), which states that "[c]hild support arrearage may not be modified retroactively" unless paternity is disestablished. Cynthia also points to 42 U.S.C. § 666, which requires states to adopt procedures to prohibit retroactive reduction of child support obligations in order to be eligible for federal grants.[42] We have previously recognized that, "[i]n general, Alaska and federal law prohibit courts from retroactively modifying child support orders."[43] David asks that we affirm the superior court's order with regard to child support.[44]

---

[40]    *See id.* (holding that the defense of *in pari delicto* is unavailable if preclusion of the suit interferes with protection of the investing public).

[41]    Though the superior court concluded that David owed child support during the period from 1997-2001 that the parties were separated, it concluded that David had already paid that support.

[42]    *See* 42 U.S.C. § 666(a)(9)(C) (2012).

[43]    *Skan v. State, Dep't of Revenue, Child Support Servs. Div.*, Mem. Op. & J. No. 1329, 2009 WL 279097, at *3 (Alaska Feb. 4, 2009).

[44]    David also argues that Cynthia surpassed the five-year time limitations in AS 09.35.020 and Alaska Civil Rule 69(d) for enforcing child support judgments. But judgments can be executed upon beyond those time limits if "good cause" is demonstrated for the delay. *See, e.g., State, Dep't of Revenue, Child Support Enforcement Div. ex rel. Inman v. Dean*, 902 P.2d 1321, 1324 (Alaska 1995). Because
(continued...)

-15-                                                7040

We briefly considered whether "Rule 90.3(h)(2)'s prohibition on retroactive modification applies where a party seeks relief from judgment under Rule 60(b)" in *Aldrich v. Aldrich*.[45] In *Aldrich* we held that "to the extent that [one parent's] motion for past child support would be interpreted solely as a motion to modify child support under Rule 90.3(h), Rule 90.3(h)(2) bars the retroactive modification that he seeks."[46] Cynthia thus argues that the superior court abused its discretion in granting David relief from child support arrears.

But Rule 90.3(h)(3) provides an exception to Rule 90.3(h)(2)'s bar on retroactive modification.[47] We have explained that this exception provides that, "if the child or children live with the obligor parent, with the consent of the obligee parent, for a period greater than nine months, and the obligor parent does not make support payments during that time, then the obligee parent may not collect the arrears."[48] In *Murphy v. Murphy*, we stated that this rule is "based on principles of equitable estoppel" and "would give [an obligor parent who lived with her children] a defense if [the parent who is owed child support] were seeking to collect child support arrears that had not yet been paid."[49]

---

[44](...continued)
the superior court made no finding as to whether good cause existed here and we resolve the child support issue on other grounds, we do not consider this argument.

[45]     286 P.3d 504, 508 n.19 (Alaska 2012).

[46]     *Id.*

[47]     *See Webb v. State, Dep't of Revenue, Child Support Enforcement Div. ex rel. Webb*, 120 P.3d 197, 199 (Alaska 2005).

[48]     *Id.* (footnote omitted).

[49]     Mem. Op. & J. No. 1192, 2004 WL 2680926, at *4 n.12 (Alaska Nov. 24, (continued...)

Although Rule 90.3(h)(3) is not directly applicable here because it requires that the obligor parent have "primary physical custody," which David and Cynthia appeared to share during the periods at issue since they were living with their children as a family, the policy interest behind this exception governs our ruling affirming the superior court. That interest applies because David lived with Cynthia and his children from 1986 to 1997 and 2001 to 2007, and he supported them between 1997 and 2001. "We have previously stated that when 'a straightforward application of [a court] rule yields [an] extreme or absurd . . . result,' it may 'require us to bend the plain language of the rule.' "[50] In *Webb v. State*, we refused to bend the plain language of Rule 90.3 because "[r]etroactively modifying the child support order to permit Webb to evade his child support obligations would result in a windfall to Webb and deprive the children of funds to which they are entitled."[51] Here, however, because David lived with and provided financial support for his children from 1986 to 1997 and 2001 to 2007, and actually did pay child support from 1997 to 2001, the superior court's grant of relief creates no windfall to David and does not deprive his children of funds to which they are entitled. As a result the superior court did not abuse its discretion in setting aside David's child support arrearage for the time the parties lived together as a family.

Cynthia also challenges as a fraudulent conveyance David's transfer of property to his new wife for $10. The superior court found that David's transfer of a property to his new wife for $10 "was done with the intent to keep the majority of the

---

[49](...continued)
2004) (citing Civil Rule 90.3(h)(3)).

[50]     *Webb*, 120 P.3d at 199 (alterations and omission in original) (quoting *Mundt v. Nw. Explorations, Inc.*, 963 P.2d 265, 270 (Alaska 1998)).

[51]     *Id.* at 200.

property unavailable to the recently renewed child support case and garnishment by [CSSD]." But because the superior court found that Cynthia "was not owed any child support," it reasoned that "no remedy is necessary." We affirm the superior court's order regarding child support and thus we do not need to address Cynthia's fraudulent conveyance claims.

## V.   CONCLUSION

Because the Fernandezes committed a fraud on the court by filing a sham dissolution in 1986, we AFFIRM the superior court's order.