*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MARY APAREZUK, | ) | |
| | ) | Supreme Court No. S-17974 |
| Appellant, | ) | |
| | ) | Superior Court No. 1SI-18-00120 CI |
| v. | ) | |
| | ) | O P I N I O N |
| JEREMY SCHLOSSER, | ) | |
| | ) | No. 7608 – July 29, 2022 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Sitka, M. Jude Pate, Judge.

Appearances: Hollis Handler, Juneau, for Appellant. Notice of nonparticipation filed by Jeremy Schlosser, pro se, Juneau, Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

HENDERSON, Justice.

## I.     INTRODUCTION

When a married couple with two children legally separated, they agreed that the father would pay the mother child support while they lived at separate residences and alternated physical custody of the children. The superior court incorporated this agreement into the separation decree. But instead of living at separate residences, the

couple continued living together with their children in the marital home. During this time the father paid for the majority of household expenses but never paid the agreed-upon and court-ordered child support.

After three years of maintaining this arrangement, the couple divorced and the mother sought to collect the father's accrued child support arrears. The father moved to preclude collection under Alaska Civil Rule 90.3(h)(3),[1] and the superior court granted his motion. The mother appeals, contending that the plain language of Rule 90.3(h)(3) requires an obligor-parent to exercise primary physical custody of a child before preclusion can apply. Yet we have recognized that the equitable principles underlying Rule 90.3(h)(3) can support preclusion in some circumstances that do not fit neatly within the Rule's plain language. Because these principles apply to the unique circumstances of this case, we affirm the superior court's order precluding collection of the arrears.

## II.    FACTS AND PROCEEDINGS

Jeremy Schlosser and Mary Aparezuk married in July 2002. The couple had two children during the marriage and lived in Juneau in a house that they rented from Schlosser's mother on the North Douglas Highway (the North Douglas home).

---

[1]    Alaska Civil Rule 90.3(h)(3) states:

The court may find that a parent and a parent's assignee are precluded from collecting arrearages for support of a child that accumulated during a time period exceeding nine months for which the parent agreed or acquiesced to the obligor exercising primary custody of the child. A finding that preclusion is a defense must be based on clear and convincing evidence.

**A.** **Schlosser and Aparezuk Separated And Came To An Agreement On The Terms of Child Custody And Child Support.**

In 2013 the couple permanently separated and entered mediation, ultimately reaching a separation agreement. The agreement required joint legal custody and shared physical custody of the children on a week on, week off basis. The separation agreement also provided for child support calculated under Alaska Civil Rule 90.3. Based on the parties' respective income and the cost of keeping the children on Schlosser's employer-provided healthcare plan, he owed $564 per month in child support.

In March 2014 the superior court issued a decree of legal separation incorporating the agreement. But once the decree went into effect, neither Schlosser nor Aparezuk abided by its terms for paying child support or alternating physical custody of the children.

**B.** **From April 2014 To May 2017, Schlosser And Aparezuk Continued To Live In The Same Home With Their Children.**

Rather than having the children move between separate residences as previously agreed, Schlosser and Aparezuk informally agreed to a new arrangement that they referred to as "nesting." Under the arrangement the children would live permanently at the North Douglas home, but the parents, Schlosser and Aparezuk, would move between households. In the end, the parents did not follow the nesting agreement either; they instead continued to live primarily at the North Douglas home with the children from April 2014 to May 2017.

The mechanics of sharing the home varied. Schlosser initially vacated the master bedroom to give Aparezuk a separate space. He first relocated to a downstairs bedroom, but at one point moved into a common room so his son could have his own

bedroom. In December 2014 Aparezuk purchased a separate home in downtown Juneau, but she did not move out of the North Douglas home at that point. Though she maintained a room at the downtown Juneau home, she also rented other rooms to tenants.

The number of nights when Schlosser and Aparezuk lived together in the North Douglas home decreased over time. In 2014 they resided in the North Douglas home together consistently through the entire year, excluding vacations. After Aparezuk purchased the downtown Juneau home, she spent less time at the North Douglas home but still resided there for about 200 nights per year in 2015 and 2016. In 2017 Aparezuk spent 60-70 nights in the North Douglas home. At one point Schlosser tried relocating to Aparezuk's home for two to three weeks while Aparezuk lived with the children in the North Douglas home, but he felt uncomfortable there and did not live elsewhere at any other point during the period at issue.

The parents agreed that their financial relationship for the three years of separation operated as it had during their marriage. Schlosser managed the family's finances, including paying household bills. Schlosser and Aparezuk shared a credit card, which they both used for family expenses. The family expenses charged to the credit card allowed the children "to do nearly all the things that they requested."

The parents used two accounts to pay the credit card bills. Schlosser had a primary checking account where he deposited his paychecks. Aparezuk and Schlosser also shared a bank account, where Aparezuk deposited her income. Schlosser paid the family expenses on the credit card out of these two accounts. He primarily withdrew from his account and withdrew from the shared account only with Aparezuk's permission. From April 2014 to May 2017, family expenses on that credit card totaled $115,638.84. Schlosser paid $76,349.65 from his account and about $39,079.27 from the shared account.

The parents disagree about how parenting worked when they both resided

in the home. Schlosser testified that he was the "primary caregiver" during this period, including being at the home when the children left for and returned from school, preparing dinners for the children "about 98% of the time," making sure the children completed their school work, and completing "the majority of the shopping." Schlosser saw himself as always present to meet the children's needs, whereas Aparezuk's availability was more variable due to her work. According to Schlosser, Aparezuk also did not always communicate her planned absences from the home, whether for work trips or vacations. Aparezuk contended that she was available to meet the children's needs just as she "always had been," including getting the children ready for school; feeding the children; signing the children up for activities; arranging play dates; taking them skiing, hiking, and biking; as well as bringing them to social events. She also described "lots of shopping" for the children.

The arrangement ended in May 2017 when Aparezuk permanently relocated to her downtown Juneau home. After Aparezuk moved out, the children started moving back and forth between the downtown Juneau and North Douglas homes.

At no point between April 2014 and May 2017 did Schlosser pay Aparezuk child support. According to Schlosser, he did not pay because Aparezuk told him she would not collect child support while they were living together with the children. Aparezuk testified it was possible that she told Schlosser she would not collect child support, but regardless she still expected Schlosser to pay child support as the separation decree required.

**D.    After Moving Out In May 2017, Aparezuk Requested Collection Of Schlosser's Unpaid Child Support, Prompting Him To Seek Relief From Enforcement In The Superior Court.**

Sometime between May and September 2017, Aparezuk applied to the Child Support Services Division (CSSD) to collect Schlosser's accrued child support

arrears. Aparezuk later withdrew her request to CSSD on advice of former counsel. In December 2017, CSSD notified Schlosser of its intent to close his case, stating that "[t]here is no current support order and the arrears are less than $500 or unenforceable," and also providing an account statement with $0 balance due.

Schlosser filed for divorce in July 2018 and moved to modify his child support obligations due to a change in circumstances. He alleged that Aparezuk now earned more income than he did, making her the obligor effective August 1, 2018. At no other point had Schlosser moved to modify his child support obligations.

At some point after Schlosser filed for divorce, Aparezuk reapplied to CSSD for assistance collecting child support. In March 2019 CSSD notified Schlosser of significant arrearages charged to him. Schlosser replied to CSSD that those arrears accumulated during the period that the parties had been living together with their children. Notwithstanding Schlosser's response, CSSD twice garnished his wages to satisfy arrears.

Schlosser then moved to abate the garnishment of his wages and to preclude CSSD from collecting his arrears. The superior court abated CSSD's garnishment of Schlosser's wages, which Aparezuk did not oppose. Aparezuk did, however, oppose Schlosser's motion for relief from the arrears that accumulated during the period at issue.

The superior court considered the parties' briefing and held four evidentiary hearings that spanned from October 2019 through June 2020. Both parties submitted documentary evidence, including their credit card and bank account statements, and testified regarding their joint living and financial arrangements for the relevant period.

### E. The Superior Court Precluded Collection Of Schlosser's Arrears Under An Equitable Reading Of Rule 90.3(h)(3).

The superior court issued its findings of fact and conclusions of law in December 2020. Based on the evidence and testimony from both parties, the court found

that after separating in April 2014, Schlosser and Aparezuk continued to live at the North Douglas home with their children until May 2017. During those three years, the court determined that Schlosser and Aparezuk shared household expenses, but that Schlosser paid for the majority of them. The court identified two accounts that the parents used to pay household bills: Schlosser had exclusive access to his personal account, but Aparezuk and Schlosser shared access to and "commingled funds in" their shared bank account. Schlosser filed an exhibit totaling household expenses on the shared credit card and the court accepted that calculation, finding that Schlosser withdrew $76,349.65 from his personal account, and $39,079.27 from the then-shared account to pay the family's expenses. The court further recognized that Schlosser and Aparezuk had "an informal, but unenforceable, agreement" that he did not need to pay child support based on Schlosser's more credible testimony.

The court concluded that the equitable principles behind Alaska Civil Rule 90.3(h)(3) precluded collecting Schlosser's arrears. Although the Rule's plain language requires that the party requesting relief have primary custody of the children for the period in question, which Schlosser did not have, the court examined the equitable purpose behind Rule 90.3(h)(3) and precluded collection to avoid "an extreme or absurd result." The court looked to *Fernandez v. Fernandez*, in which we determined that collection of arrears accumulating while the obligor and obligee lived together and shared custody of their children should be precluded.[2] In that case, preclusion provided "no windfall to [the father]" who had supported the children when the family lived together, and did "not deprive [the] children of funds to which they

---

[2]      358 P.3d 562, 571 (Alaska 2015).

[we]re entitled."[3]

Based on the record, the superior court determined that the same equitable principles "behind Rule 90.3(h)(3) govern[ed]" in this case. In particular, "Schlosser presented clear and convincing evidence that he directly supported the parties' children for the three years they exclusively reside[d] at his home, and his contributions to the family's expenditures alone were sufficient to not deprive them of any funds to which they [we]re entitled." Schlosser's total contributions to household expenses during the period the parties lived in the same household "covered approximately 66% of the family's expenses," which surpassed the "$20,304 in child support that would have accrued during that period (36 months x Schlosser's monthly obligation of $564)." The court determined that these contributions mitigated any risk of a windfall to Schlosser or injustice to Aparezuk. The court thus granted Schlosser's motion and precluded Aparezuk and CSSD "from collecting Schlosser's child support arrears that accrued from "April 1, 2014 through April 30, 2017."

In the alternative, the superior court credited Schlosser's payments as nonconforming child support payments. The court based its alternative reasoning on an equitable reading of AS 25.27.020(b).[4]

---

[3]     *Id.*

[4]     AS 25.27.020(b) states:

In determining the amount of money an obligor must pay to satisfy the obligor's immediate duty of support, the agency shall consider all payments made by the obligor directly to the obligee or to the obligee's custodian before the time the obligor is ordered to make payments through the agency. After the obligor is ordered to make payments through the agency, the agency may not consider direct payments made to the obligee or the obligee's custodian unless the obligor

(continued...)

Aparezuk appeals.[5]

## III. STANDARD OF REVIEW

Whether the superior court correctly interpreted Rule 90.3(h)(3) to authorize precluding the collection of child support arrears "depends on the application of a court rule" and "is thus a question of law."[6] We review questions of law de novo, "adopting the rule of law most persuasive in light of precedent, reason, and policy."[7] If the superior court was authorized under Rule 90.3(h)(3) to preclude collection of arrears in its equitable discretion, we review the exercise of this power for abuse of discretion[8] and will reverse "when the decision on review is manifestly unreasonable."[9]

## IV. DISCUSSION

This case concerns whether Schlosser, the child support obligor, may preclude the collection of child support arrears under Rule 90.3(h)(3) despite never having primary custody of the children. Although Aparezuk is correct that the facts of this case do not fit neatly with the language of Rule 90.3(h)(3), we agree with the superior court that equitable principles underlying the Rule support precluding collection of arrears under the circumstances. We therefore affirm the court's order precluding

---

[4] (...continued)
provides clear and convincing evidence of the payment.

[5] Schlosser is not participating in the appeal.

[6] *Webb v. State, Dep't of Rev., Child Support. Enf't Div. ex rel. Webb*, 120 P.3d 197, 198 (Alaska 2005).

[7] *Murphy v. Newlynn*, 34 P.3d 331, 333 (Alaska 2001).

[8] *Beal v. Beal*, 209 P.3d 1012, 1016 (Alaska 2009).

[9] *Fernandez v. Fernandez*, 358 P.3d 562; 565 (Alaska 2015) (quoting *Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, 355 P.3d 503, 508 (Alaska 2015)).

Aparezuk and CSSD from collecting Schlosser's arrears that accumulated from April 2014 through April 2017.[10]

**A.    Alaska Civil Rule 90.3(h)(3) Authorizes The Superior Court To Preclude Collection Of Child Support Arrears In Limited Circumstances.**

An obligor is generally barred from retroactively modifying child support obligations.[11]  Despite this general prohibition of retroactive modification, an obligor may use Rule 90.3(h)(3) to preclude the collection of arrears "in limited and appropriate cases."[12]  "[B]ased on principles of equitable estoppel,"[13]  Rule 90.3(h)(3) allows an obligor to preclude collection of arrearages that accrued during a period of time nine months or longer if the obligor proves by clear and convincing evidence that he or she exercised primary custody of a child during that time with the obligee's acquiescence or agreement.[14]

Under a strict reading of Rule 90.3(h)(3), preclusion is not available to

---

[10]    We do not reach the superior court's alternative ruling crediting Schlosser's arrears under AS 25.27.020(b), because we affirm the court's grant of relief under Rule 90.3(h)(3).

[11]    Alaska R. Civ. P. 90.3(h)(2) ("Child support arrearage may not be modified retroactively, except [when paternity is disestablished]."); Alaska R. Civ. P. 90.3 cmt. X.B. (explaining that "Rule 90.3(h)(2) is intended to restate" the Bradley Amendment, a federal law that "prohibits retroactive modification of child support arrearages").

[12]    Alaska R. Civ. P. 90.3 cmt. X.C; Alaska R. Civ. P. 90.3(h)(3).

[13]    *Fernandez*, 358 P.3d at 570 (quoting *Murphy v. Murphy*, No. S-10923, 2004 WL 2680926, at *4 n.12 (Alaska Nov. 24, 2004)); *see also* former Alaska R. Civ. P. 90.3 cmt. X.C. (2004) ("Illinois courts have applied the doctrine of equitable estoppel to mitigate the sometimes harsh effect of the rule against retroactive modification.").

[14]    Alaska R. Civ. P. 90.3(h)(3); *Murphy v. Newlynn*, 34 P.3d 331, 335 (Alaska 2001) (allowing preclusion when one of two children lived with obligor parent).

Schlosser because he never exercised primary custody of the children.[15] But our analysis does not end there. When Rule 90.3(h)(3)'s plain language "yields [an] extreme or absurd . . . result,"[16] we have looked to the involved equities in considering whether to preclude collection of arrears.[17]

Our limited precedent offers guidance about when equitable circumstances may prompt preclusion under Rule 90.3(h)(3). We have twice held that circumstances not fitting within a strict reading of the plain text of Rule 90.3(h)(3) nevertheless supported precluding collection of child support arrears, if the children in question had received all of the monetary support they were entitled to and when preclusion was necessary to avoid a windfall to the obligee.[18]

In *Murphy v. Newlynn* we held that precluding collection of child support arrears was appropriate under Rule 90.3(h)(3), when the obligor had exercised primary custody of one of the two children for whom he owed child support and was seeking to preclude collection of arrears as to that child.[19] The obligee in *Murphy* argued that Rule 90.3(h)(3) did not apply because the Rule required an obligor seeking preclusion to

---

[15]     *See* Alaska R. Civ. P. 90.3(f)(2) ("A parent has . . . primary custody . . . if the children reside with the other parent for . . . less than 30 percent of the year."); *Fernandez*, 358 P.3d at 570-71 ("Rule 90.3(h)(3) is not directly applicable here because it requires that the obligor parent have 'primary physical custody,' which [the parents] appeared to share during the periods at issue since they were living with their children as a family.").

[16]     *Fernandez,* 358 P.3d at 571 (alterations in original) (quoting *Webb v. State, Dep't of Rev., Child Support. Enf't Div. ex rel. Webb*, 120 P.3d 197, 199 (Alaska 2005)).

[17]     *See Webb*, 120 P.3d at 199-200.

[18]     *Murphy*, 34 P.3d at 335-36; *Fernandez*, 358 P.3d at 571.

[19]     34 P.3d at 335.

exercise "primary custody of the *children*," and the obligor in that case had exercised primary custody only of one child, not both children.[20] Looking to the Commentary to Rule 90.3 for guidance, we rejected such a strict reading of the Rule.[21] We noted that the Commentary's discussion of preclusion at that time referred to the application of equitable estoppel in Illinois as a basis for our Rule.[22] We observed that in Illinois, equitable estoppel allows an obligor "who assumes primary custody of only one of the children . . . [to] escape responsibility for paying support for that child."[23] Relying on "the rationale behind Alaska's child support laws" that child support awards "are intended to benefit the child, not provide a windfall to a parent,"[24] we extended preclusion to include an obligor who has primary custody of only one or some of the involved parties' children.[25]

We similarly emphasized the equitable foundation of Rule 90.3(h)(3) in *Fernandez v. Fernandez*, when we held that the Rule precluded collecting the obligor's arrears that accumulated while he and the obligee lived together and shared custody of their children.[26] The couple in *Fernandez* had dissolved their marriage in 1986 but

---

[20] *Id.* at 334 (emphasis in original) (quoting Alaska R. Civ. P. 90.3(h)(3)).

[21] *Id.* at 334-35.

[22] *Id.*

[23] *Id.*

[24] *Id.* (quoting *Bennett v. Bennett*, 6 P.3d 724, 727 (Alaska 2000)).

[25] *Id.*

[26] 358 P.3d 562, 570-71 (Alaska 2015).

continued to live as a family between 1986 and 1997 and again from 2001 to 2007.[27] During the two lengthy periods when the family lived and operated as a family, the obligor "provided financial support" but did not pay child support.[28]  When the couple did not live together between 1997 and 2001, the obligor paid his monthly child support obligations.[29]  After 2007 the obligee contacted CSSD to collect child support arrears of approximately $118,000 that had accumulated from 1986 to 2007.[30]  The superior court concluded that the parents had dissolved their marriage as part of a scheme to shield some marital assets from bankruptcy creditors, and it set aside the dissolution under Alaska Civil Rule 60(b).[31]  The obligee appealed, arguing that the superior court abused its discretion by ordering relief from the dissolution decree in violation of Rule 90.3(h)(2)'s prohibition of retroactive modification of support.[32]  We affirmed the superior court, in part because "the policy interest behind [Rule 90.3(h)(3)] govern[ed]]," even though Rule 90.3(h)(3)'s plain language did not.[33]  We determined that since the obligor "lived with and provided financial support for his children" during the applicable

---

[27]     *Id.* at 564.

[28]     *Id.* at 564, 571.

[29]     *Id.*

[30]     *Id.*

[31]     *Id.*  Rule 60(b) permits a court to, "[o]n motion and upon such terms as are just, . . . relieve a party . . . from a final judgment, order, or proceeding."

[32]     *Fernandez,* 358 at 570.

[33]     *Id.* at 571.

time periods, precluding collection of arrears "create[d] no windfall to [the obligor,] . . . [did] not deprive his children of funds to which they [we]re entitled," and was necessary to avoid an "extreme or absurd . . . result."[34]

Conversely, in *Webb v. State, Department of Revenue, Child Support Enforcement Division ex. rel. Webb*, we affirmed the court denying preclusion under Rule 90.3(h)(3) since preclusion would have created a windfall to the obligor and deprived the children of support.[35] The obligor in *Webb* did not have custody — primary or shared — of any of his children, but he sought to preclude collection of arrears that accumulated while his children lived with their grandparents rather than the obligee.[36] We concluded that applying the Rule's plain language and requiring the obligor to pay his child support arrears did "not lead to an extreme or absurd result."[37] We noted specifically that the obligor "was not absolved of a duty to support his children merely by their living with a third party."[38] That the obligee also lacked physical custody did not result in a windfall to her because the grandparents could seek compensation from

---

[34]    *Id.* (last alteration in original).

[35]    120 P.3d 197, 199-200 (Alaska 2005).

[36]    *Id.* at 198-99.

[37]    *Id.* at 199.

[38]    *Id.*

her as well to cover their costs.[39] Furthermore, the children would benefit from the collection of arrears because the obligee had resumed caring for the children and was "required . . . to administer support funds on the children's behalf."[40]

Aparezuk contends that applying preclusion as we did in *Fernandez* and as the superior court did here impermissibly broadens what should be a very limited exception to Rule 90.3(h)(2)'s general prohibition against retroactive modification. She argues that an equitable consideration of whether to preclude collection of arrears opens child support orders to evidentiary hearings involving "an accounting of every dollar and cent [that the obligor] contributed to household expenses."

We are not convinced by these arguments. To start, the federal Bradley Amendment, on which Rule 90.3(h)(2) is based, does not disturb a trial court's discretion to hear equitable defenses to child support judgments.[41] And we have previously likened this equitable application of preclusion to the doctrine of equitable estoppel.[42] In addition, we note that the circumstances of this case, involving one parent's attempt to collect child support arrears for the same period of time that the parents continued to live with their children in one household and maintain joint finances, are quite unique. As discussed above, our precedent reflects relatively few cases presenting the concerns at

---

[39]     *Id.* at 199-200.

[40]     *Id.* at 200 (citing AS 25.27.060(a), which establishes that the obligee must administer child support on behalf of the children).

[41]     Child Support Enforcement Program; Implementation of Section 9103 of Public Law 99-509; Prohibition of Retroactive Modification of Child Support Arrearages, 54 Fed. Reg. 15,757, 15,761 (1989).

[42]     *Fernandez v. Fernandez*, 358 P.3d 562, 570 (Alaska 2015) (quoting *Murphy v. Murphy*, No. S-10923, 2004 WL 2680926, at *4 n.12 (Alaska Nov. 24, 2004)); *Murphy v. Newlynn*, 34 P.3d 331, 334-35 (Alaska 2001).

issue here, where the children have clearly received the support they are entitled to and where collection of the arrears at issue would provide a significant windfall to the obligee and lead to an "extreme [or] absurd . . . result."[43]

Ultimately we conclude that in the limited circumstances when clear and convincing evidence demonstrates that applying Rule 90.3(h)(3)'s plain language "yields [an] extreme or absurd result," the superior court may consider the equities in deciding whether to preclude collecting arrears.[44]  When reaching the equities, the court may preclude collection of arrears to avoid a windfall to the obligee, so long as the obligor's children will receive and benefit from the monetary support that they are owed.[45]  If the equities demonstrate the opposite — a windfall to the obligor or the deprivation of the children's entitled support — "there is no reason to go beyond the words of the rule and allow preclusion."[46]

**B.     The Superior Court Did Not Abuse Its Discretion By Precluding Collection Of Child Support Arrears Under The Circumstances.**

Aparezuk further contends that, to the extent the superior court had discretion under Rule 90.3(h)(3) to consider precluding collection of Schlosser's child support arrearages, the court abused its discretion because the equities do not support preclusion.  We disagree.  As the superior court correctly observed, the equities at issue here are quite similar to those analyzed in *Fernandez*.  Like the obligor-father in *Fernandez*, Schlosser financially supported the children while the family lived together

---

[43]     *Fernandez,* 538 P.3d at 571 (second alteration in original) (quoting *Webb*, 120 P.3d at 199).

[44]     *Webb*, 120 P.3d at 199 (alteration in original).

[45]     *Murphy*, 34 P.3d at 335-36; *Fernandez*, 358 P.3d at 571.

[46]     *Webb*, 120 P.3d at 200.

by paying for the majority of the household expenses. Preclusion does not give Schlosser a windfall because those expenses well exceeded the amount of child support he would otherwise have owed Aparezuk. Moreover, preclusion does not deprive the children of support they are entitled to because Schlosser's payment of the great majority of the family's expenses enabled the children "to do nearly all the things that they requested" during the period in question. As the superior court explained, to make preclusion unavailable to Schlosser would require him "to pay twice for child support obligations, creating an undeserved windfall to Aparezuk."

Aparezuk attempts to distinguish our decision in *Fernandez* and to liken this case to *Webb*. Her main point of distinction is that *Fernandez* only addressed relief from arrears under Rule 60(b), not Rule 90.3(h)(3). In so arguing, Aparezuk confuses our precedent and the record in this case. Our reasoning in *Fernandez* rejected the obligee's argument that Rule 90.3(h)(2) prohibited relief from the "sham dissolution" under Rule 60(b).[47] We recognized that because preclusion, an exception to the prohibition on retroactive modification, was available to the obligor, Rule 90.3(h)(2) did not bar Rule 60(b) relief.[48] In other words, our determination that preclusion was available to the obligor under Rule 90.3(h)(3) was central to our decision to affirm the superior court's order granting Rule 60(b) relief. Here we chart a similar path, allowing preclusion as relief to otherwise nonmodifiable arrears for a parent who financially supported his children. By contrast, the obligor in *Webb* neither supported nor had custody of his children.[49]

Aparezuk also appears to argue that her financial situation weighs against

---

[47]    358 P.3d at 570-71.

[48]    *Id.*

[49]    *Webb*, 120 P.3d at 199-200.

preclusion. She specifically focuses on her purchase of the downtown Juneau home, noting that she had to rent out the home to pay its mortgage, while Schlosser did not have to pay for the North Douglas home, which is held in trust for him. Because of this financial disparity, she suggests that she should be permitted to collect Schlosser's child support arrears despite his significant financial contributions while the family continued to live together.[50] But the question whether to apply Rule 90.3(h)(3) to preclude collection of arrears focuses on the impact of unpaid support on the children and only contemplates the impact on the parents to the extent one parent receives a windfall as the result of either collecting or precluding child support arrearages.[51] The support to which the children were entitled in this matter was in no way impacted by Aparezuk's decision to purchase a separate home; indeed, the agreements underlying the original child support order anticipated that Aparezuk would be living in a separate residence. Aparezuk's decision to purchase a home did not change the fact that Schlosser paid for most of the family's living expenses during the time that they lived together, an amount well exceeding the arrears that accrued during those years. Nor does it change the fact that Aparezuk would receive a significant windfall if she were permitted to collect child support arrears that accrued while the family lived together despite Schlosser's substantial financial contributions during the same time period.

## V.   CONCLUSION

We AFFIRM the superior court's grant of relief precluding Aparezuk and CSSD from collecting Schlosser's child support arrears.

---

[50]     In her briefing Aparezuk seemed to contest some of the superior court's factual findings about the family's living arrangements and Schlosser's contributions to the family's expenses. But at oral argument, Aparezuk clarified that she is not challenging any of the court's factual findings.

[51]     *Webb*, 120 P.3d at 200.